[950 NYS2d 35]

John Cappabianca, Appellant, v Skanska USA Building Inc., et al., Respondents.

First Department, August 14, 2012

140

APPEARANCES OF COUNSEL

*Andrew H. Rosenbaum*, New York City, for appellant.

*Shaub, Ahmuty, Citrin & Spratt, LLP*, Lake Success (*Robert M. Ortiz, Christopher Simone* and *Gerard S. Rath* of counsel), for Skanska USA Building Inc. and others, respondents.

*Law Offices of Safranek, Cohen & Krolian*, White Plains (*Joseph J. Rava* of counsel), for Safety and Quality Plus, Inc., respondent.

## OPINION OF THE COURT

FREEDMAN, J.

Plaintiff John Cappabianca seeks to recover for injuries he sustained in July 2005 when his foot became stuck, causing him to fall off the pallet on which he was standing while cutting bricks with an electric saw at the construction site for a New York City school. He asserted claims against all defendants under Labor Law §§ 200 (1), 240 (1) and 241 (6), as well as a claim sounding in common-law negligence. Plaintiff now appeals from the May 2010 order of the motion court which, among other things, granted defendants' motions for summary judgment on his claims and denied his cross motion for partial

summary judgment as to liability with respect to his causes of action. He also appeals from the resulting June 2010 judgment dismissing the complaint.

For the reasons set forth below, we affirm the motion court's dismissal of the Labor Law § 200 claim, the related negligence claim, and the Labor Law § 240 (1) claim. We reinstate plaintiff's Labor Law § 241 (6) claim as against some defendants, insofar as the claim is based on certain provisions of the Industrial Code (12 NYCRR 23-1.1 *et seq.*), but affirm the court's denial of plaintiff's motion for partial summary judgment on liability.

The following summarizes the record in the light most favorable to plaintiff. Defendant New York City School Construction Authority owned the work site and defendant Skanska USA Building Inc. acted as the project's general contractor. Skanska USA Building subcontracted with plaintiff's employer, nonparty Job Opportunities for Women (Job Opportunities), to perform masonry work, and engaged defendant Safety and Quality Plus, Inc. (Safety) as a consultant to inspect the project, report safety deficiencies to the general contractor, and conduct safety meetings.

Cappabianca worked at the job site from March 2005 through the date of his accident on July 29, 2005. He was supervised by and reported directly to Job Opportunities foremen; none of the defendants supervised him or otherwise controlled his work, and none had the authority to do so. Job Opportunities furnished Cappabianca with the tools and equipment he used on the job.

Cappabianca's work consisted of cutting bricks with Job Opportunities' stationary wet saw. Located on the school's unfinished third floor, the saw and its stand sat on a wooden pallet that lay on the concrete floor. The pallet was anywhere from 4 to 12 inches high. While operating the saw, Cappabianca stood on an adjacent pallet of the same height to enable him to operate its foot pedal, arm lever, and cut-off switch. The pallets' surfaces were composed of slats positioned about three to six inches apart. A Skanska manager who observed the arrangement of the saw and the pallets testified that it was the Job Opportunities' "construction standard."

While in use, a wet saw sprays water on bricks being cut to cool and lubricate the bricks and the cutting blade and reduce dust and flying particles. According to Cappabianca, the saw malfunctioned in that its hood area sprayed water "all over," including onto the floor, instead of directing the water into an

attached tray as it was designed to do. The water from the saw accumulated on the floor underneath his pallet and made it slippery, and the pallet shifted horizontally in a circular arc of about six inches when he picked up bricks or put them down. Cappabianca states that he complained about the water to Job Opportunities and Skanska personnel. Contrary to the dissent's contention, Cappabianca singled out the defective saw as the source of the water on the floor, and there is no evidence that the water, which accumulated directly around the saw, had any other source. The rainwater to which the dissent refers is mentioned in a witness's records from one month before the accident. Those records do not specify where the water was, and they indicate that laborers were addressing the problem by sweeping up the rainwater. The same witness did not remember seeing any water at the location of the accident.

Cappabianca described his accident as follows: after he had cut a brick, he turned to put it on an adjacent pallet. The pallet upon which he stood shifted on the slippery floor as he turned, causing him to lose his footing. His left foot got caught between pallet slats and he fell to the floor and injured his knee.

In March 2006, plaintiff commenced this action against School Construction Authority and four other governmental entities* (the City defendants), Skanska USA Building and its affiliate, Skanska USA Inc. (Skanska), and Safety. Safety cross-claimed against Skanska for contribution and indemnity, both common-law and contractual, and the City defendants and Skanska asserted similar cross claims against Safety. After discovery, the City defendants and Skanska, and, by separate motion, Safety, moved for summary judgment dismissing the complaint and the cross claims against them. Plaintiff opposed and cross-moved for partial summary judgment on liability. The motion court granted defendants' motions and dismissed the complaint and cross claims.

We first turn to plaintiff's Labor Law and negligence claims against the City defendants and Skanska and we will then address his claims against Safety. Section 200 (1) of the Labor Law codifies an owner's or general contractor's common-law duty of care to provide construction site workers with a safe place to work (*Perrino v Entergy Nuclear Indian Point 3, LLC*, 48 AD3d 229, 230 [2008]). Claims for personal injury under the statute

---

* These include the Board of Trustees of the New York City School Construction Authority, the City of New York Board of Education, the New York City Department of Education and the City of New York.

and the common law fall into two broad categories: those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed (*see Cook v Orchard Park Estates, Inc.*, 73 AD3d 1263, 1264 [2010]). Where an existing defect or dangerous condition caused the injury, liability attaches if the owner or general contractor created the condition or had actual or constructive notice of it (*Mendoza v Highpoint Assoc., IX, LLC*, 83 AD3d 1, 9 [2011]). Where the injury was caused by the manner and means of the work, including the equipment used, the owner or general contractor is liable if it actually exercised supervisory control over the injury-producing work (*Foley v Consolidated Edison Co. of N.Y., Inc.*, 84 AD3d 476, 477 [2011]; *Dalanna v City of New York*, 308 AD2d 400 [2003]).

Here, all of the contributing causes of the accident directly arose from the manner and means in which Cappabianca was performing his work. He has consistently maintained that Job Opportunities, which exclusively supervised him, furnished him with a defective saw which continuously sprayed water onto the floor and made it slippery. He further alleges that Job Opportunities directed him to operate the saw while standing on an unsecured pallet. Finally, Cappabianca alleges that the pallet Job Opportunities directed him to use was unsafe because of the gaps on its surface, and that his foot got caught in a gap and caused him to lose his footing.

Since the City defendants and Skanska did not control the work that caused the accident, the section 200 and related negligence claims were properly dismissed. In *Dalanna v City of New York* (308 AD2d 400 [2003], *supra*), this Court affirmed the dismissal of a Labor Law § 200 claim brought by a plumber who, while installing pipes on a tank, tripped over a bolt that protruded from a concrete slab. Months before, a number of bolts had been used to temporarily anchor the tank to the slab before its permanent installation elsewhere. After the tank was removed from the slab, the plaintiff's employer was supposed to have cut all the bolts level with the surrounding surface, but it missed the bolt on which the plaintiff tripped. We found that the protruding bolt was not "a defect inherent in the property," but instead resulted from "the manner in which plaintiff's employer performed its work" (308 AD2d at 400). Thus, even if the owner and general contractor in *Dalanna* had constructive notice of the bolt, they could only be held liable under section 200 if they had exercised supervisory control over the employer's

work (*id.; see also McCormick v 257 W. Genesee, LLC*, 78 AD3d 1581, 1582 [2010]).

We disagree with the dissent's contention that *Dalanna* should not control here or that it conflicts with the cases that the dissent cites. None of those cases involve an allegedly dangerous condition on the premises that directly arose from the manner and means of the plaintiff's work (*see Caspersen v La Sala Bros.*, 253 NY 491, 493 [1930] [elevator installer struck by brick dropped by masons working 10 or 11 stories higher]; *Mortensen v Magoba Constr. Co.*, 248 NY 577 [1928] [subcontractor's employee injured when the concrete flooring that another subcontractor had installed collapsed]; *Seaman A.B. Chance Co.*, 197 AD2d 612, 613 [1993], *appeal dismissed* 83 NY2d 847 [1994] [worker removing tree electrocuted by live power wire running through premises]; *Bass v Standard Brands*, 65 AD2d 689, 689 [1978] [worker dismantling tank was injured by lid that "from long disuse" had become unsafe before work commenced]; *Wohlfron v Brooklyn Edison Co., Inc.*, 238 App Div 463 [1933], *affd* 263 NY 547 [1933] [contractor's employee passing along concrete slab stepped into hole that another contractor had cut two weeks before]).

The dissent believes that defendants' lack of supervisory control is irrelevant because the accident was entirely caused by a dangerous condition existing on the premises, namely, the water from the wet saw that accumulated on the floor. In response, we first point out that requiring Cappabianca to stand on an unsecured pallet with a gapped surface while he worked undoubtedly played a significant role in causing his accident. Also, the record does not support the dissent's related claim that Cappabianca stood on the pallet to avoid the water; rather, Cappabianca testified that he had to stand on the pallet to operate the saw properly. While the dissent asserts that the only possible reason for Job Opportunities' use of the pallets was to avoid the water, that theory is purely conjectural.

In characterizing the water as a dangerous condition on the premises, the dissent does not take into account that the water would not have been present but for the manner and means of plaintiff's injury-producing work. Since the water was directly caused by work over which the City defendants and Skanska had no control, holding them liable for it under section 200 would make them responsible for Job Opportunities' negligence. However, section 200 does not impose vicarious liability on owners and general contractors (*see generally Ross v Curtis-Palmer*

*Hydro-Elec. Co.*, 81 NY2d 494, 502, 506 [1993] [comparing Labor Law § 241 (6), a vicarious liability statute, with section 200]). Liability under section 200 only attaches where the owner or contractor had the "authority to control the activity bringing about the injury to enable it to avoid or correct an unsafe condition" (*Russin v Louis N. Picciano & Son*, 54 NY2d 311, 317 [1981]). Since defendants could not control the activity that continuously produced the water, namely, the operation of the wet saw, they lacked any ability to correct the unsafe condition and thus were not liable under section 200 or for negligence (*see Biafora v City of New York*, 27 AD3d 506, 507-508 [2006]).

■ As for the claims against the City defendants and Skanska under Labor Law § 240 (1), often called the scaffold law, Cappabianca's accident could not give rise to liability under that statute because he was at most 12 inches above the floor and was not exposed to an elevation-related risk requiring protective safety equipment (*see e.g. Toefer v Long Is. R.R.*, 4 NY3d 399 [2005] [fall from floor of a flatbed truck to ground four-to-five feet below did not trigger scaffold law coverage because the use of statute's enumerated safety devices are normally associated with more dangerous activity]; *Lombardo v Park Tower Mgt. Ltd.*, 76 AD3d 497, 498 [2010] [no scaffold law claim where a staircase step, raised 18 inches above the floor, broke and caused the plaintiff to fall]; *Torkel v NYU Hosps. Ctr.*, 63 AD3d 587, 590 [2009] [ramp whose bottom rested on the street and whose top rested on the adjacent sidewalk curb, with height differential of at most 12 to 18 inches, did not expose the plaintiff to type of hazard that the scaffold law contemplates]; *Skudlarek v Bethlehem Steel Corp.*, 251 AD2d 974, 975 [1998] [dismissing scaffold law claim by a plaintiff who fell from 10-to-12-inch-high pallet onto floor]).

■ However, plaintiff's claim under Labor Law § 241 (6) is reinstated insofar as it is based upon the City defendants' and Skanska's violation of Industrial Code (22 NYCRR) §§ 23-1.7 (d) and 23-9.2 (a). Section 241 (6) imposes a nondelegable duty on premises owners and contractors at construction sites to provide reasonable and adequate safety to workers (*see Ross*, 81 NY2d at 501-502). To establish a claim under the statute, a plaintiff must show that a specific, applicable Industrial Code regulation was violated and that the violation caused the complained-of injury (*id.*).

Plaintiff sets forth a claim based on section 23-1.7 (d) of the Industrial Code, which prohibits owners and employers from

letting workers use "a floor, . . . scaffold, platform or other elevated working surface which is in a slippery condition" and requires that water and other "foreign substance[s]" which may cause slippery footing be removed or covered. That regulation applies because the record presents a triable issue whether, as Cappabianca alleges, the saw sprayed water onto the floor because it was malfunctioning or whether, as defendants claim, the water was not a foreign substance within the meaning of the regulation because wet saws always spray water onto the floor (compare *Galazka v WFP One Liberty Plaza Co., LLC*, 55 AD3d 789, 790 [2008], *lv denied* 12 NY3d 709 [2009] [dismissing Labor Law § 241 (6) claim based on Industrial Code § 23-1.7 (d) because the wet plastic on which the plaintiff slipped was integral part of asbestos removal project and not a "foreign substance"]). In addition, the record raises an issue whether the water on the floor caused Cappabianca to slip and fall.

The other applicable regulation, Industrial Code § 23-9.2 (a), requires that "any structural defect or unsafe condition in [power-operated] equipment shall be corrected by necessary repairs or replacement." At issue is whether the saw was defective and whether its defect contributed to the accident.

■ We agree with the motion court's dismissal of the Labor Law § 241 (6) claims against the City defendants and Skanska based on sections 23-1.7 (b) (1) (i) and (e) (2), 23-1.8 (c) (2), 23-5.1 (b), (c) (2), (e) (1), (f) and (h), 23-1.22 (c) (1) and 23-5.2 of the Industrial Code. Section 23-1.7 (b) (1) (i), which requires that "hazardous openings" be guarded to prevent someone from stepping or falling into them, does not apply because the three-to-six-inch openings between the slats of the pallet were not large enough for a person to fit through (see e.g. *Bell v Bengomo Realty, Inc.*, 36 AD3d 479, 480 [2007]). Section 23-1.7 (e) (2), which requires work areas to be kept free of tripping hazards, is inapplicable because Cappabianca does not allege that he tripped on an accumulation of dirt or debris. Section 23-1.8 (c) (2), requiring workers on "wet footing" to be provided with waterproof boots or similar protective footwear, is inapplicable because Cappabianca testified that he wore rubber-soled work boots that adequately protected him. Sections 23-5.1 (b), (c) (2); (e) (1); (f) and (h) and 23-5.2 regulate scaffolds, but none were involved here. Finally, section 23-1.22 (c) (1) sets safety standards for platforms used to transport vehicular and pedestrian traffic and is inapplicable to the pallet on which Cappabianca stood (see *Dzieran v 1800 Boston Rd., LLC*, 25 AD3d 336, 338 [2006]).

Contrary to plaintiff's contention, he is not entitled to summary judgment as to liability on his reinstated Labor Law § 241 (6) claim because, as indicated, the City defendants and Skanska have raised triable issues about whether the Industrial Code regulations were violated and, if so, whether the violations caused the accident (*see Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 349-351 [1998]).

■ Finally, all of plaintiff's claims against Safety were properly dismissed because, in its limited role as a safety consultant for the construction project, the company could not be held liable as the owner's or general contractor's agent. Safety's contract limited its responsibilities and did not confer any authority to supervise and control Cappabianca's work (*see Smith v McClier Corp.*, 22 AD3d 369, 371 [2005] [an agent's general contractual obligation to ensure compliance with safety regulations at a work site does not constitute a sufficient basis for liability under the Labor Law or a theory of negligence]).

Accordingly, the judgment of the Supreme Court, New York County (Saliann Scarpulla, J.), entered June 25, 2010, dismissing the complaint and all cross claims, and bringing up for review an order, same court and Justice, entered May 10, 2010, which granted defendants' motions for summary judgment dismissing the complaint and cross claims, and denied plaintiff's cross motion for partial summary judgment as to liability, should be modified, on the law, the judgment vacated as to the City defendants and Skanska, the motion of the City defendants and Skanska for summary judgment denied as to the Labor Law § 241 (6) claim insofar as it is based on 12 NYCRR 23-1.7 (d) and 23-9.2 (a), and otherwise affirmed, without costs. The appeal from the order, same court and Justice, entered May 10, 2010, should be dismissed, without costs, as subsumed in the appeal from the judgment.

CATTERSON, J. (dissenting in part). I must respectfully dissent to the extent that I would reinstate the plaintiff's Labor Law § 200 and common-law negligence claims against all of the defendants, except Safety, insofar as they are based on a dangerous premises condition, and there is an issue of fact as to whether the defendant owner and/or general contractor had actual or constructive notice of the condition. The plaintiff's uncontroverted testimony, as set forth more fully below, establishes that he was injured because he fell off a pallet when it "turned" in water and "muck" which had been allowed to accumulate over a period of weeks on the concrete floor of the

construction site where the plaintiff was working. Moreover, the majority incorrectly posits that the accumulation of water and debris on the floor resulted "only" from the plaintiff's leaking wet-saw tray, and that "there is no evidence that the water, which accumulated directly around the saw, had any other source." However, the deposition testimony of a nonparty's safety specialist, set out infra, indicates that water also accumulated on every floor of the construction site after rain. In any event, as set forth more fully below, the majority's holding ignores long-settled precedent espousing basic common-law principles that establish that at some point over time the "means and methods," or the manner in which work is performed by a subcontractor over whom an owner or general contractor has no supervisory control may result in a dangerous premises condition implicating the owner or general contractor. (*See Employers Mut. Liab. Ins. Co. of Wis. v Di Cesare & Monaco Concrete Constr. Corp.*, 9 AD2d 379, 383 [1959]; *Wohlfron v Brooklyn Edison Co., Inc.*, 238 App Div 463 [2d Dept 1933], *affd* 263 NY 547 [1933].)

The relevant portion of Labor Law § 200 states as follows:

"All *places* to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein . . . All *machinery, equipment and devices* in such places shall be so placed, *operated*, guarded and lighted as to provide reasonable and adequate protection to all such persons" (emphasis added).

It is well established that Labor Law § 200 is a codification of the common-law duty imposed on an owner or general contractor to maintain a safe construction site. (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 352 [1998].) In other words, a claim arising pursuant to the provision is "tantamount to a common-law negligence claim in a workplace context." (*Mendoza v Highpoint Assoc., IX, LLC*, 83 AD3d 1, 9 [1st Dept 2011].)

The plain language of the statute indicates there are two distinct prongs or categories to the provision: one pertains to the work premises and the requirement that they be maintained in a safe condition; the second pertains to work performance and the requirement of using material and tools in a safe manner and providing equipment and tools which are safe to use. The latter category is that part of the common-law duty to

maintain a safe work site which was extended by statute to "include the tools and appliances without which the place to work would be incomplete." (*Hess v Bernheimer & Schwartz Pilsener Brewing Co.*, 219 NY 415, 418 [1916].) Over time, this category has been characterized as "means and methods" or "tools and methods" (*see Persichilli v Triborough Bridge & Tunnel Auth.*, 16 NY2d 136, 145 [1965]), or "methods or materials." (*Ortega v Puccia*, 57 AD3d 54, 61 [2d Dept 2008] [where claims arise out of alleged defects and dangers in the "methods or materials of the work"].)

It is generally accepted that claims fall within one of the two categories. (*Persichilli*, 16 NY2d at 146 [defective scaffold was a device involving methods and means of work supervised by subcontractor; not breach of duty to provide safe place to work]; *Ortega*, 57 AD3d at 61 [two categories "should be viewed in the disjunctive"].)

Unlike Labor Law §§ 240 and 241 where absolute liability attaches to an owner or general contractor, a plaintiff seeking recovery under section 200 must satisfy the liability standards of common-law negligence. In other words, where the plaintiff's injuries arise out of a dangerous premises condition, the plaintiff must show that the owner or general contractor either created the condition, or had actual or constructive notice of it sufficient for corrective action to be taken. (*See Mitchell v New York Univ.*, 12 AD3d 200 [1st Dept 2004], citing *Gordon v American Museum of Natural History*, 67 NY2d 836 [1986].) Where a plaintiff's injuries arise because of an alleged defect or danger in the methods or material of the work, recovery against an owner or general contractor cannot be had "unless it is shown that the party to be charged exercised some supervisory control" over the methods of work or materials supplied. (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 505 [1993].)[1] The starting point of any analysis of Labor Law § 200 claims therefore should be to ascertain what caused the plaintiff's injury: whether it was caused by a dangerous premises condition, or

---

**1.** Although not an issue here, it should be noted that the Court of Appeals has rejected the idea of any sort of crossover between liability standards such as liability attaching when an owner or general contractor has "notice of the unsafe manner in which the work [is being] performed." (*Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876, 878 [1993].) Conversely, liability under Labor Law § 200 may be predicated solely on notice of a dangerous condition without any proof of supervision over the work involved. (*Shipkoski v Watch Case Factory Assoc.*, 292 AD2d 589, 590 [2d Dept 2002]; *see also Kerins v Vassar Coll.*, 15 AD3d 623, 625 [2d Dept 2005].)

whether the plaintiff was injured because of the manner in which the work was being performed, or as a result of defective tools and equipment.

Therefore, for the purposes of apportioning liability, determination that a plaintiff's injury arises from "means and methods" or "manner in which work was performed" does not end the inquiry. The additional question to be answered is who had supervisory control because an owner or general contractor is not obliged to protect the employees of his subcontractors against the negligence of another "occurring as a detail of the work." (*Comes v New York State Elec. & Gas Corp.*, 82 NY2d 876 [1993] [plaintiff's injury while lifting a steel beam was caused by the manner in which the plaintiff lifted the beam unassisted at direction of his employer]; *Wright v Belt Assoc.*, 14 NY2d 129, 134 [1964] [negligent act of subcontractor occurring as "detail of the work"]; *Zucchelli v City Constr. Co.*, 4 NY2d 52, 55 [1958] [place of accident was part of subcontractor's "work in progress" when floor of building under construction collapsed because of his negligent removal of shoring a few days before]; *Hess*, 219 NY at 418-419 [place owner must make safe does not include subcontractor's plant, equipment or "the very work" he is doing].) Thus, the duty of the owner or general contractor to provide a safe place to work is not breached when the injury arises out of a defect in the subcontractor's own plant, tools, methods or through the negligent acts of another occurring as a detail of the work. (*Ortega v Puccia*, 57 AD3d 54 [2d Dept 2008], *supra.*)

This is an "outgrowth of the basic common-law principle that an owner or general contractor [sh]ould not be held responsible for the negligent acts of others over whom [the owner or general contractor] ha[s] no direction or control." (*Ross*, 81 NY2d at 505 [internal quotation marks omitted].)

Nevertheless, long-settled precedent establishes that at some point over time the "negligent acts of others" may become a dangerous premises condition implicating the owner or general contractor. (*Di Cesare*, 9 AD2d at 383 ["(t)he duty of providing a safe place to work is a twofold duty . . . The premises are made safe by the discovery of dangers ascertainable through reasonable diligence and remedying them . . . They are kept safe by forbearance from creating new conditions of danger"].)

In circumstances where the negligent act or manner in which work was performed under another's supervision results in a condition which "exist[s] for such a length of time that the

[owner] as a question of fact was bound to have knowledge of [its] presence . . . [and] being for a long time completed, [it] must be held to be within the control of the owner." (*Wohlfron*, 238 App Div at 466.) Alternatively, where a negligent act or manner in which work is performed by another impacts the "commonly used portions of the work premises" (*Cangiano v Charles Lo Bosco & Son, Inc.*, 23 AD2d 860 [1965]), or the "ways and approaches to the worksite," an owner/general contractor has the duty of making it safe. (*Di Cesare*, 9 AD2d at 385; *see also Caspersen v La Sala Bros.*, 253 NY 491 [1930, Cardozo, Ch. J.].)

In *Caspersen*, the Court decided an owner's liability based on the following facts: The plaintiff was injured while installing an elevator on the ground floor; the elevator was next to a stairway shaft above the plaintiff and not visible to the plaintiff. Further up the shaft, masons were using tiles and bricks and one of the bricks fell down the shaft striking the plaintiff on the head. The Court held, "The defendant is not chargeable with the negligence of the masons[ working for a subcontractor] [but] [i]t is chargeable with its own negligence in failing to guard *the ways* against perils unknown to the worker." (253 NY at 494-495 [emphasis added].) The Court determined that the owner was liable because at common law it was his duty to use reasonable care in maintaining the *approaches* to the elevator (plaintiff's worksite) in a condition of reasonable safety. (*Id.*, citing *Mortensen v Magoba Constr. Co.*, 248 NY 577 [1928] [defendant general contractor liable for the plaintiff worker's injury when concrete floor newly installed by a subcontractor and on which bags of cement were placed collapsed while the plaintiff was walking across it].)

The determination by the *Wohlfron* court is particularly instructive: in that case, the plaintiff was injured while proceeding along a concrete slab "to the place where his work was to be performed." (238 App Div at 464.) However, a subcontractor had bored holes on the outside of the slab. The holes were left unguarded and were not visible to the plaintiff, and nothing warned him of their presence. The plaintiff stepped into one of them and fell 26 feet. The court held that the "duty rests on the owner or general contractor to . . . see to it that the workmen have reasonable protection against the consequences of hidden dangers known to the owner or general contractor, or which ought to have been known by him." (238 App Div at 465.) The court added: "This obligation is clearly distinguishable from

that arising through negligent acts of a subcontractor occurring as a detail of the work." (*Id.* at 466.) It is interesting to note that the time which elapsed between the subcontractor boring the holes and the plaintiff falling into one, was just two weeks.

Further, this Court relying on *Caspersen*, held in *Bass v Standard Brands* (65 AD2d 689 [1978]), that an owner was liable for a dangerous premises condition even though the plaintiff was injured by a lid falling on him *as he was removing* the agitator shaft inside the tank covered by the lid. Nevertheless, based on evidence that as a result of *long* disuse the lid had become unsafe and had sunk in upon the agitator shaft, this Court found that the lid fell on the plaintiff and injured him because of a dangerous premises condition, rather than because of the manner in which the plaintiff performed the work.

The majority observes that none of these cases involves a dangerous premises condition arising directly out of manner and means of a plaintiff's work. The majority, in my opinion, misses the point. While not arising from the plaintiff's manner of work, the dangerous premises conditions in three of the four cases that caused the plaintiffs' injuries nevertheless arose from the negligent acts or the manner in which work was performed by others over which the owner had no supervision. However, in each case the court determined that such "manner of work" had become a dangerous premises condition either through the passage of time, or because it affected an area which an owner always has a duty to keep safe.

In this case, in my opinion, the record supports the view that the plaintiff was injured as a result of a dangerous premises condition: namely the 10-foot swath of water and debris which accumulated over a period of many weeks in the area where he was working. Moreover, even if "means and methods" namely the plaintiff's use of a leaking wet-saw tray contributed to the water accumulation, the accumulation of water and debris was allowed to stand for a sufficiently long time for it to become a dangerous premises condition which the defendants owner and general contractor were obliged to remedy. The plaintiff was cutting bricks with a wet-saw. The saw sat on a wooden pallet raised 8 to 10 inches above a concrete floor. The pallet's slats were about six inches apart. The plaintiff stood on an adjoining pallet to operate the saw, which sprays water onto the bricks while they are being cut.

The plaintiff's undisputed testimony is that there was an accumulation of water and "muck" (debris) under the pallet. The

plaintiff also testified that some of the water came from his wet-saw, which leaked because it had a defective tray. He further testified that he was injured after he turned to place a brick on an adjoining pallet, and that, as he was turning, the pallet moved, his foot slipped between the slats, and he fell onto the concrete floor. The plaintiff's testimony in relevant part was as follows:[2]

"Q: Why did [standing on the pallet] concern you?

"A: Because the surface that I had to stand on was not connected to anything

"Q: How was th[at] fact . . . connected . . . [to] your job safety?

"A: Because of the water problem

"Q: How did those two problems then in conjunction affect your safety?

"A: It caused the skid to turn on me while I was standing on it.

"Q: . . . [W]hat would cause the skid to turn . . . ?

"A: Accumulation of water."

Later, the plaintiff testified as follows:

"Q: I understand your foot was caught in the slats, is it your testimony that's what

caused you to fall?

"A: No.

"Q: What caused you to fall?

"A: The motion of turning; the skid turned when I turned. . . .

"Q: Do you know whether or not the water played any role in the way that the skid moved?

"A: Yes.

"Q: How do you know that?

"A: It was under the skid. . . .

"Q: Did your foot become trapped before the skid moved or after the skid moved?

---

2.   In the testimony the pallet is sometimes referred to as a skid.

"A: At the same time.

"Q: So my question then is, did the skid move because of the motion of your foot while it was in the hole of the skid or before it became [sic] in the hole of the skid? Do you understand my question?

"A: Yes. Before."

Based on the foregoing excerpts from the plaintiff's testimony, the plaintiff was injured because he fell, and he fell for no other reason than because the pallet moved/turned in the *accumulated* water underneath. In other words, the import of the plaintiff's uncontroverted testimony was that his injury was not directly caused by the manner in which he performed his work, nor as a result of the methods and materials used to perform the task. He was not injured by the spraying water from the malfunctioning tray, or because the pallet was defective. He was injured because he fell, and he fell *only* because the pallet moved and he missed his footing and the pallet moved *only* because there was an accumulation of water and debris under the pallet that existed over a long period of time. Had water not accumulated under the skid causing it to turn, he could have continued performing his work with a leaking wet-saw tray standing on a pallet with slats without falling.

In my opinion, the majority's view that all the contributing causes of the plaintiff's injury resulted from the work done by the plaintiff, even if it was an accurate representation of facts in the record, does not alter the fact, as stated unequivocally by the plaintiff, that it was the accumulation of water and debris that precipitated the plaintiff's accident. However, the majority misreads the facts of record.

First, it is not clear that all the water on the floor came from the defective wet-saw; Fabian Garzon, the safety specialist employed by nonparty Safety testified that during an inspection, he witnessed "laborers were sweeping water from the rain on every floor." Thus, the record contains unrebutted evidence that any rainstorm would cause water to pool on the floors of the open construction site. Nor was the plaintiff able to testify that the water on the floor was caused *only* by leaking from the wet-saw tray. Second, the majority's claim that the "arrangement of the saw and the pallets [was a] 'construction standard'" is wholly incorrect and based on a misreading of the record. Paul Deremer, Skanska's safety manager referred to a construction standard in testifying about the construction of the pallet

itself and the gapped surface of the pallet; he also used the word "standard" in testifying about the custom of moving cut bricks on a pallet by forklift. He did not testify that the "arrangement of the saw and the pallets" was the custom of the industry. Indeed, the arrangement was unusual enough for the plaintiff to testify that he repeatedly complained about the wet-saw and its stand being positioned on a pallet. Finally, while the plaintiff did not testify that he was provided with the pallet *because* of the accumulated water, his testimony nevertheless points to such a conclusion: There is no reason given in the testimony for providing the plaintiff with a pallet raised 8 to 10 inches off the ground in order for him to operate a wet-saw which is also placed on a pallet. The majority's observation that the plaintiff stood on the pallet because the wet-saw was on an adjoining pallet begs the question, of course, of why the saw and its stand were positioned on the pallet.

In any event, the relevant facts here are that water *was allowed to accumulate* along with other debris and muck over a period of weeks to create a dangerous premises condition. The plaintiff's testimony was that he had complained several times over a period of several weeks about the dangerous condition of water and "muck" accumulating on the floor until it was an inch deep and 10 feet wide on the floor. The plaintiff testified unequivocally that "[they] could have provided a safer workplace in terms of - first thing would be the floor, always having you know, collections of water, and it was very slippery."

Ultimately, in my opinion, the majority resorts to precedent of questionable value so that based on the foregoing facts it may still reach a conclusion that the plaintiff's injury was caused by "means and methods" rather than a dangerous premises condition implicating the owner and general contractor. In *Dalanna v City of New York* (308 AD2d 400 [2003]), the Court held that a dangerous premises condition (a protruding bolt in the work area) did not constitute an unsafe place to work for purposes of Labor Law § 200 where the dangerous condition (the protruding bolt) resulted from the manner in which the plaintiff's *employer* performed its work in an unrelated activity months prior to the injury-producing activity engaged in by the plaintiff.

The decision in *Dalanna* does not comport with the body of case law pertaining to Labor Law § 200. First, it should be noted that in any Labor Law § 200 and common-law negligence claim where a plaintiff's injury allegedly results from "means and methods" or the manner in which the work is performed, the

injury results from the manner in which *the plaintiff* performs the task, or the means and methods or tools used by *the plaintiff* during the injury-producing activity or by his employer/ subcontractor's negligent acts occurring as a *detail of the work*. (*See Comes*, 82 NY2d at 877; *Ferrero v Best Modular Homes, Inc.*, 33 AD3d 847 [2006], *lv dismissed* 8 NY3d 841 [2007] [plaintiff's injury occurred during tree removal as a result of the plaintiff performing the task in an unsafe manner by operating a chainsaw while standing at the top of a 20-foot ladder].)

Where a plaintiff's injury occurs as a result of his employer's or a subcontractor's negligent act, that act must occur as a "detail of the work" in which the plaintiff is engaged more or less contemporaneously. The precedent on which *Dalanna* purports to rely (*Wright*) does not stand for the proposition that the negligent act of a plaintiff's employer or subcontractor may take place *months prior* to the plaintiff's injury.

In *Wright*, the negligent act of the plaintiff's employer in not shoring up the cheeks of a foundation was a "detail of the work" in which the plaintiff was engaged in uncovering a drainpipe for the construction of a cesspool. It therefore impinged on the "very work" that the plaintiff was doing. (14 NY2d at 134.) Although the majority reconfigures the timeline of events in *Dalanna*, in fact, the negligent act of the plaintiff's employer in leaving a protruding bolt was performed *months* prior to the accident when the plaintiff tripped over the bolt. Thus, under basic common-law principles, the bolt was sufficiently "long-established" for the condition to be in the "control" of the owner. (*See Wohlfron*, 238 App Div at 466.) Hence, to the extent that *Dalanna* holds that the owner/general contractor in that case were not liable *even if* they had constructive notice of the protruding bolt, it essentially stands common-law negligence principles on their head.

It should be noted that the holding has been cited just once for the proposition that an unsafe premises condition created by a plaintiff's employer renders the plaintiff's Labor Law § 200 claim to be a claim based on the manner in which the employer's work was performed. (*See McCormick v 257 W. Genesee, LLC*, 78 AD3d 1581 [2010].) Incomprehensibly, the majority relies on *McCormick* to establish *Dalanna* as *controlling* precedent.

Finally, while the majority tacitly acknowledges that a dangerous premises condition existed, its view that the plaintiff's means and methods *were "contributing causes* of the accident" should not preclude a finding that the defendant owner and

general subcontractor were liable if they had actual or constructive notice of the accumulation of water and debris. (*See Seaman v A.B. Chance Co.*, 197 AD2d 612 [2d Dept 1993], *appeal dismissed* 83 NY2d 847 [1994] [manner in which work of cutting down a tree was performed by the plaintiff standing on uninsulated platform provided by his employer *contributed* to electrocution of the plaintiff when he hit a live electric transmission line running through a tree on land owned by the Town of Babylon; because Babylon had actual notice of the live power line in the tree it had slated for removal, it had notice of the dangerous condition and was therefore liable].) Similar to the circumstances of this case, it would not have mattered for the plaintiff to stand on an uninsulated platform, if there was no live power line running through the tree.

FRIEDMAN and RENWICK, JJ., concur with FREEDMAN, JJ.; MAZZARELLI, J.P., and CATTERSON, J., dissent in a separate opinion by CATTERSON, J.

Judgment, Supreme Court, New York County, entered June 25, 2010, dismissing the complaint and all cross claims, and bringing up for review an order, same court and Justice, entered May 10, 2010, which granted defendants' motions for summary judgment dismissing the complaint and cross claims, and denied plaintiff's cross motion for partial summary judgment as to liability, modified, on the law, the judgment vacated as to the City defendants and Skanska, the motion of the City defendants and Skanska for summary judgment denied as to the Labor Law § 241 (6) claim insofar as it is based on 12 NYCRR 23-1.7 (d) and 23-9.2 (a), and otherwise affirmed, without costs. Appeal from order, same court and Justice, entered May 10, 2010, dismissed, without costs, as subsumed in the appeal from the judgment.