| **Ciru v Chelsea Dynasty, LLC** |
|:---:|
| 2024 NY Slip Op 34163(U) |
| November 26, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 154352/2016 |
| Judge: Leslie A. Stroth |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT:    HON. LESLIE A. STROTH                    PART                    12 M

*Justice*

-----------------------------------------------------------------------X

MAYDA CIRU as Administratrix of the Estate of FELIX CIRU, Deceased,

                                        Plaintiff,

                    - v -

CHELSEA DYNASTY, LLC, CAULDWELL-WINGATE COMPANY, LLC,FORCE SERVICES, LLC

                                        Defendant.

-----------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 154352/2016 |
| MOTION DATE | N/A |
| MOTION SEQ. NO. | 002 003 |

**AMENDED
DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 002) 46, 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 58, 59, 79, 80, 81, 82, 83, 84, 87, 119, 120, 121, 122, 123

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

The following e-filed documents, listed by NYSCEF document number (Motion 003) 60, 61, 62, 63, 64, 65, 66, 67, 68, 69, 70, 71, 72, 73, 74, 75, 76, 77, 78, 85, 88, 89, 124, 125, 126, 127, 128, 129

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

Plaintiff Felix Ciru (plaintiff) commenced this action seeking damages for personal injuries he sustained when a demolition bin was allegedly pushed into him while he was working at Hotel Chelsea, located at 222 West 23rd Street, New York, New York (the subject premises) on July 8, 2015.

## I.    Alleged Facts and Procedural History

At the time of the incident, defendant Chelsea Dynasty, LLC (Chelsea Dynasty or Chelsea), owner of the subject premises, contracted with defendant Cauldwell-Wingate Company, LLC (Cauldwell) to act as general contractor for a renovation project (the project) being performed at the premises. Plaintiff was also working as a contractor at the premises for his employer, non-party Willowfield Development, LLC (Willowfield), when two employees of defendant Force Services,

**154352/2016  CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No.  002 003**

Page 1 of 15

[* 1]

LLC (Force Services or Force), the demolition contractor, allegedly pushed a demolition bin[1] into him, knocking him over and breaking his right arm. Chelsea Dynasty retained Force pursuant to a trade contract dated September 9, 2014 (NYSCEF doc. no. 75 [the trade contract]).

Plaintiff commenced this action against Chelsea Dynasty, Cauldwell, and Force Services for violations of Labor Law §§ 200 and 241 (6). Chelsea Dynasty asserts cross-claims against Force Services for common law indemnity, contribution, contractual indemnification, and breach of contract for failure to procure insurance. Cauldwell asserts cross-claims against Force for contribution, common law indemnification, and contractual indemnification. Finally, Force Services asserts cross-claims against co-defendants Chelsea and Cauldwell for common law indemnification and contribution.

Defendants Chelsea Dynasty and Cauldwell (collectively, Chelsea/Cauldwell) move together for an order pursuant to CPLR 3212 for summary judgment dismissing plaintiffs Labor Law §§ 200 and 241 (6) and Force Service's cross-claims against them (motion sequence 002).[2] Plaintiff and Force Services oppose.

Force Services moves for summary judgement pursuant to CPLR 3212, seeking dismissal of all claims and cross-claims against it (motion sequence 003). Plaintiff, Chelsea Dynasty, and Cauldwell oppose.

---

[1] The parties refer to the demolition bin interchangeably as a dumpster, demolition bin, or bin throughout their papers and deposition testimony.

[2] The Court notes that Chelsea Dynasty and Cauldwell bring motion sequence no. 002 together. However, they have separate arguments with respect to certain counterclaims. For ease of reference, they are referred to as Chelsea/Cauldwell herein, as they make the same arguments. However, they are named separately when their arguments differ.

**154352/2016 CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No. 002 003**

**Page 2 of 15**

## II.    Relevant Deposition Testimony

### A.    Plaintiff's Testimony

At his deposition, plaintiff testified that Willowfield employed him as a carpenter on the date of the accident. He identified the owner of Willowfield, Mike, as his boss, who would instruct him by phone where he was supposed to report for work. Terry[3] was Willowfield's Manager for the job site, who would assign plaintiff his tasks each day. Plaintiff testified that while he was working on the project, his only instructions on how to perform his tasks came from Terry. Further, he noted that all of the equipment that he used to perform his job was provided by Willowfield or was brought to the jobsite by the plaintiff himself.

On the day of the accident, plaintiff was instructed to sheetrock a wall inside a furniture store, which was located within the premises but could only be entered from outside. Plaintiff testified that the accident occurred when he left the furniture store to look for a two-by-four piece of wood. When he returned to the premises, he walked toward a staircase that he intended to take from the street level to reach the first floor. To reach the staircase plaintiff had to pass by the freight elevator located near the workers' entrance. Plaintiff testified that as he was walking directly in front of the elevator, he was struck by a dumpster being pushed out of the elevator by two Force Services employees, one of whom was named Victor Martinez.

Plaintiff testified that he recognized Victor because on some days Victor and the other Force Services employees would have tee-shirts indicating that they were working for Force Services, and he had seen Victor taking out trash at the jobsite on some occasions prior to the incident. Immediately before the accident, plaintiff saw Victor and his co-worker behind the dumpster in the elevator. Victor and his co-worker pushed the dumpster out of the elevator.

---

[3] Plaintiff testified that he did not know either the last name of either "Mike" or "Terry." *See* NYSCEF doc. no. 51 at 37, lines 6-7; 42, lines 22-23.

**154352/2016    CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No. 002 003**

Plaintiff claims that due to a mis-leveling of the elevator, Victor and his co-worker had to use additional force in moving the dumpster out of the freight elevator. Plaintiff jumped backwards, but the dumpster still came into contact with his body, pushing him against the wall, resulting in injuries.

### B. Cauldwell Testimony

Cauldwell produced Chris Hargrove, its Executive Vice President, for deposition. Mr. Hargrovee testified that during the course of the construction project he visited the job site to oversee progress, support the staff, and do other related oversight tasks. Mr. Hargrove testified that Scott Abadinsky was Cauldwell's superintendant, who was on-site daily, along with Cauldwell's project manager, Jim Slocum, and Assistant Project Manager, Michel Linde. Mr. Hargrove attested that Mr. Abadinsky's duties as superintendent included daily walk-throughs of the project, during which he would assess the progress of the project and quality control of the work. According to Mr. Hargrove, Mr. Abadinsky would prepare daily logs, which contained his observations in connection to the walkthroughs.

Mr. Hargrove identified Force Services as providing demolition and general cleanup work, which included picking up garbage for other trades. To perform its work, Force Services used small, steel demolition dumpsters on wheels, which its workers would load up with debris and take to be dumped. According to Mr. Hargrove, the Force Services employees used a freight elevator in the lobby of the premises to access the unloading area. Mr. Hargrove claimed that Cauldwell had not received any complaints in connection with the freight elevator prior to the date of the plaintiff's accident. Further, Mr. Hargrove did not recall any incidents of mis-leveling of the freight elevator when he utilized it during his visits to the job site.

**154352/2016  CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No.  002 003**

**Page 4 of 15**

Cauldwell also produced its project manager, Michael Linde, for deposition. Mr. Linde testified that he was familiar with Force's work as the demolition sub-contractor on the project. Mr. Linde stated that it was Cauldwell's custom and practice to generate an accident report in the event someone was injured on the job. In this case, Mr. Linde testified that he did not recall seeing, discussing, or preparing an accident report in conjunction with the alleged incident. He also said that he never heard of an individual named Victor Martinez being on site and did not know for which company he worked. Mr. Linde further testified that he did not receive any complaints about Force's work. He noted that he did not recall seeing Force laborers wearing any type of uniform bearing an insignia with the company's name.

### C. Chelsea Dynasty

Richard Fraglia, the General Manager of the Hotel Chelsea, appeared for a deposition on behalf of Chelsea Dynasty. Mr. Fraglia acknowledged that at the time of the incident, there were two elevators in the subject premises, one intended for use by the tenants, and the freight elevator which was used by the workers. At his deposition, Mr. Fraglia was presented with the Department of Buildings records which show a history of complaints and violations involving elevators at the premises. He denied having any knowledge of the nature of the complaints. While Mr. Fraglia acknowledged that his building engineer had received a complaint during the course of the renovation project, Mr. Fraglia testified that it related to issues regarding the elevator doors closing, and he was unable to recall if the complaint was received before or after the plaintiff's accident.

### D. Force Services

Victor Anazco, a bricklayer, testified at deposition on behalf of Force Services. According to Force's payroll records the week of the accident, he was the only Victor working for Force at

**154352/2016 CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No. 002 003**

**Page 5 of 15**

5 of 15

the time of the accident. He testified that he was employed by Force Services and worked on the construction project. Mr. Anazco testified that Ramone Morocho was the Force Services foreman, and he assigned the Force Services employees tasks each day. It was also Mr. Morocho's responsibility to ensure that the Force Services employees performed their work correctly. While working at the premises, Mr. Anazco testified that he received all of his work instructions from Force Services employees.

Mr. Arazco explicitly testified that he had no personal knowledge of the plaintiff's accident, and denied having pushed the container that struck plaintiff, or having been in the accident location when the incident occurred. He said he did not push any containers on the date of the accident because it was not his job. He testified that he is not aware of any accidents regarding the containers at the premises, and that he was never supplied with any tee-shirts or paraphernalia identifying force.

### III. Analysis

It is well-established that the "function of summary judgment is issue finding, not issue determination." *Assaf v Ropog Cab Corp.*, 153 AD2d 520 (1st Dept 1989) (quoting *Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 [1957]). As such, the proponent of a motion for summary judgment must tender sufficient evidence to show the absence of any material issue of fact and the right to entitlement to judgment as a matter of law. *Alvarez v Prospect Hospital*, 68 NY2d 320 (1986); *Winegrad v New York University Medical Center*, 64 NY2d 851 (1985).

Once a party has submitted competent proof demonstrating that there is no substance to its opponent's claims, the opponent, in turn, is required to "lay bare [its] proof and come forward with some admissible proof that would require a trial of the material questions of fact on which [its] claims rest." *Ferber v Sterndent Corp.*, 51 NY2d 782, 783 (1980). Therefore, the party opposing

**154352/2016   CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No.  002 003**

**Page 6 of 15**

6 of 15

[* 6]

a motion for summary judgment is entitled to all favorable inferences that can be drawn from the evidence submitted. *See Dauman Displays, Inc. v Masturzo*, 168 AD2d 204 (1st Dept 1990), citing *Assaf v Ropog Cab Corp.*, 153 AD2d 520, 521 (1st Dept 1989). Summary judgment is a drastic remedy that should not be granted where there is any doubt as to the existence of issues of fact. *See Sillman v Twentieth Century-Fox Film Corp.*, 3 NY2d 395, 404 (1957).

### A. Labor Law § 241 (6) Claims

Chelsea/Cauldwell move for an order granting them summary judgment dismissing plaintiff's Labor Law § 241 (6) cause of action. Separately, Force Services also moves for an order granting it summary judgment dismissing plaintiff's Labor Law §§ 200 and 241 (6) claims. Plaintiff opposes both motions, which are consolidated below for disposition.

For plaintiff to establish liability pursuant to Labor Law § 241 (6), a violation of the Industrial Code must be shown. *See e.g. Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494 (1993) (holding that Labor Law § 241 (6) imposes a non-delegable duty upon owners and general contractors and their agents for violation of the statute). To prevail on a claim under this section, plaintiff must demonstrate that his or her injuries were proximately caused by a violation of the Industrial Code provision. *See Ares v State*, 80 NY2d 959, 960 (1992). Here, plaintiff's claim under Labor Law § 241 (6) is based on violations of 22 NYCRR § 23-3.2 (c) and 22 NYCRR § 23-3.3(e).[4]

Industrial Code § 23-3.2 (c) provides: "Barricades. Demolition sites shall be fenced, barricaded or provided with sidewalk sheds in compliance with this Part (rule)." Industrial Code § 23-3.3(e) provides:

---

[4] Plaintiff does not oppose defendants' motions to the extent they seek dismissal of Labor Law § 241 (6) claims based on violations of other industrial code provisions. Therefore, to the extent plaintiff pursued Labor Law claims premised on anything other than violations of 12 NYCRR § 23-3.2 (c) and § 23-3.3 (e), such claims are deemed abandoned.

**154352/2016   CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No. 002 003**

**Page 7 of 15**

Methods of operation. Where the demolition of any building or other structure is being performed by hand, debris, bricks and any other materials shall be removed as follows: (1) By means of chutes constructed and installed in compliance with this Part (rule); (2) By means of buckets or hoists; or (3) Through openings in the floors of the building or other structure in compliance with this section.

Plaintiff argues that under Industrial Code § 23-3.2(c), barricades should have been erected to keep plaintiff and others away from the pathway of the concrete debris being removed in the dumpster. Additionally, plaintiff argues that pursuant to Industrial Code § 23- 3.3(e) the concrete debris should have been removed by designated chutes or buckets and hoists or openings in the floor.

With respect to Industrial Code § 23-3.2(c), this section refers to work sites themselves and the protection necessary for the public; it does not refer to work areas within the site, as was the case here. Contrary to plaintiff's assertions, this provision does not require that an area where a dumpster is being transported within a building be barricaded. *See Cardenes v One State Street*, LLC 68 AD3d 436 (1st Dept 2009) ("this definition requires that work involve changes to the structural integrity of building, as opposed to more renovation of its interior"). Accordingly, Industrial Code § 23-3.2(c) is inapplicable to the instant matter, as it does not require that barricades should have been set up in the type of interior renovation on which plaintiff was working.

Likewise, Industrial Code § 23-3.3(e) does not apply to the facts of this case, as this section refers to debris being removed from higher levels. The First Department in *Freitas v NYCTA*, 249 AD2d 1874 (1st Dept 1996) firmly held that this provision refers to debris being removed from height to the ground and does not apply where debris on the ground was being collected in a wheeled dumpster at ground level. Here, plaintiff claims that a wheeled dumpster being pushed by two Force Services employees on the ground level made contact with him. As such, Industrial Code § 23-3.2(c) does not apply to these circumstances.

**154352/2016   CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No.  002 003**

**Page 8 of 15**

8 of 15

[* 8]

Accordingly, as neither Industrial Code § 23-3.2(c) nor Industrial Code § 23-3.3(e) are applicable to the case at bar, Chelsea/Cauldwell and Force Services have established their entitlement to judgment as a matter of law dismissing plaintiff's Labor Law § 241 (6) cause of action against them.

## B. Labor Law § 200 and Common Law Negligence Claims

Labor Law § 200 codifies the common law duty of an owner to provide construction workers with a safe place to work. *See Comes v New York State Elec. and Gas Corp.*, 82 NY2d 876, 877 (1993). It is well-settled that an owner or general contractor will not be found liable under common law or Labor Law § 200 when it has no notice of any dangerous condition which may have caused the plaintiff's injuries, nor the ability to control the activity that caused any such dangerous condition. *See Russin v Picciano & Son*, 54 NY2d 311[1981]; *see also Rizzuto v Wenger Contr. Co.*, 91 NY2d 343, 352 [1998]; *Singleton v Citnalta Constr. Corp.*, 291 AD2d 393, 394 [2002].

Labor Law § 200 and common law claims fall under two categories: "those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed." *Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 133-144 (1st Dept 2012). Under the first category, the owner had to have either created the condition or have actual or constructive notice of it. *Id.* at 144. Under the second category, the owner or general contractor is liable if "it actually exercised supervisory control over the injury-producing work." *Id.*

### i. Chelsea/Caudwell Motion to Dismiss Plaintiff's Labor Law § 200 Claim

Chelsea Dynasty and Cauldwell argue that the evidence is uncontroverted that plaintiff received work instruction only from his employer, Willowfield, while working at the subject

**154352/2016  CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No.  002 003**

**Page 9 of 15**

9 of 15

[* 9]

location. They further maintain that neither Chelsea nor Cauldwell supervised or controlled or directed the plaintiff's work. Moreover, Chelsea and Cauldwell assert that there is no evidence that they were on notice of any mis-leveling issue with the freight elevator at or around the time of the incident. In fact, Chris Hargrove of Cauldwell and Richard Fraglia of Chelsea both denied any knowledge as to any claim of mis-leveling in the elevator prior to the plaintiff's incident. Further, Michaeel Linde, Cauldwell's project manager, testified that he did not recall seeing, discussing, or preparing an accident report in conjunction with the alleged incident, which was Cauldwell's custom and practice to generate in the event that someone was injured on the job.

In opposition, plaintiff argues that Chelsea and Cauldwell are liable for plaintiff's injuries because they permitted work to be conducted without appropriate safety measures, such as a barricade or flagman, and with a mis-leveled elevator. Specifically, plaintiff claims that the two Force Services workers, who were working on the jobsite for which Chelsea and Cauldwell were responsible, and lost control of the dumpster because they had to push it harder to get the dumpster over the height differential between the elevator floor and the hallway floor. Plaintiff's unequivocal testimony was that a Force Services worker named Victor pushed a dumpster into him, causing harm. Plaintiff argues that Chelsea and Cauldwell, as owner and general contractor, respectively, had actual and/or constructive knowledge of the elevator defects through various New York City Department of Building (DOB) violations that refer to the elevators in the premises. Force Services joins in opposition to Chelsea Dynasty and Cauldwell's motion, arguing, in sum and substance, that questions of fact exist regarding whether Chelsea Dynasty or Cauldwell had actual or constructive notice of the alleged mis-leveling of the freight elevator and what degree of control they exercised over the jobsite.

**154352/2016 CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No. 002 003**

**Page 10 of 15**

[* 10]

10 of 15

It is axiomatic that for liability under Labor Law § 200 to attach to an owner or a general contractor due to the "means and methods" of the plaintiff's work, the owner or general contractor must have directed or controlled the plaintiff's work. *O'Sullivan v IDI Constr. Co. Inc.*, 3 NY2d 805 (2006). First, it is uncontroverted that plaintiff received work instruction from only his employer, Willowfield, while working at the subject location. It is plaintiff's position that his accident arose from the work of Force employees. However, Victor Anazco, a Force Services bricklayer, testified at his deposition that he received all of his instructions from Force Services employees. Further, none of the parties assert that the workers pushing the cart were employed by either Chelsea or Cauldwell. As neither Chelsea nor Cauldwell actually exercised supervisory control over the injury-producing work, they cannot be held liable for the manner in which the work was performed. *Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 133-144 (1st Dept 2012).

Alternatively, for liability to attach to Chelsea and Cauldwell for an alleged defect or dangerous premises condition, such as the mis-leveling of the elevator, plaintiff must demonstrate that the owner or general contractor either created the condition or was on notice of the alleged condition. *See Espinoza v Azure Holding II L.P.*, 58 AD3d (1st Dept. 2008). At their depositions, Chris Hargrove (Cauldwell), Micheal Linde (Cauldwell), and Richard Fraglia (Chelsea), all denied any knowledge of mis-leveling of the elevator prior to the plaintiff's incident. Although plaintiff cites to DOB violations that refer to the elevators in the premises, none of these violations refer to any issue of mis-leveling with the elevator involved in the subject incident.

As such, Chelsea and Cauldwell have met their prima facie burden in demonstrating that they are entitled to dismissal of plaintiff's Labor Law § 200 and common law negligence claims, as they neither supervised the work causing the incident nor had notice of the alleged defective

**154352/2016  CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No.  002 003**

**Page 11 of 15**

11 of 15

INDEX NO. 154352/2016

RECEIVED NYSCEF: 11/26/2024

condition, and neither plaintiff nor Force Services have submitted contrary evidence in admissible form that raises material questions of fact.

### i. Force Services' Motion to Dismiss Plaintiff's Labor Law § 200 Claim

Force Services also moves for summary judgment seeking dismissal of Labor Law § 200 claim against it. As a threshold matter, it argues that, as a subcontractor, it is not responsible for providing a safe worksite under Labor Law § 200. Moreover, Force argues that it did not exercise the requisite supervisory authority over the conditions at the jobsite that would attach Labor Law liability onto it. In particular, Force maintains that it did not supervise Willowfield workers, including plaintiff. Force also emphasizes that it did not create a dangerous condition on the site, as the only Victor it employed at the time of the accident, Victor Anazco, disclaimed any knowledge of the incident.

Chelsea/Cauldwell argue that it is irrelevant whether Force supervised or directed where Willowfield workers were to be deployed or what tasks they were to complete. Rather, the critical inquiry is whether they supervised the Force Workers who allegedly caused the accident. Chelsea/Cauldwell point out that Victor Amazco testified that Force Service workers received all of their instructions from Force's foreman, and that Force Services controlled the means and methods of its work.

Force Services misconstrues its responsibilities under the Labor Law. Courts have held that, "[t]he label given a defendant, whether 'construction manager' or 'general contractor,' is not determinative ... [inasmuch as] the core inquiry is whether the defendant had the 'authority to supervise or control the activity bringing about the injury so as to enable it to avoid or correct the unsafe condition'" *Stiegman v Barden & Robeson Corp.*, 162 AD3d 1694, 1697 (4th Dept 2018); *see also Andrade v Triborough Bridge & Tunnel Auth.*, 35 AD3d 256, 257 (1st Dept 2006).

154352/2016  CIRU, FELIX vs. CHELSEA DYNASTY, LLC
Motion No.  002 003

Page 12 of 15

Accordingly, Force Services may be liable under Labor Law § 200 as a subcontractor if it exercised supervisory control of the work that brought about plaintiff's injury.

It is further irrelevant that Force Services disclaims that it had any control over Willowfield's workers. Rather, plaintiff claims that the actions of the Force workers who pushed the cart were what caused his injury. Victor Anazco's testimony makes clear that he received all of his instructions from Force Services, including the manner and means of performing the work (i.e. using a steel dumpster and the freight elevator). However, there is a material question of fact as to who was pushing the cart when it struck plaintiff, given that plaintiff testified at his deposition that the accident involved a "Victor Martinez," but Force Services alleges that it had no employee at that site by the name of Victor Martinez, and that its only employee of a similar name on site, Victor Anazco, denied being anywhere near the accident or having any knowledge of it.

The Court is presented with the conflicting testimony of plaintiff, who maintains that he was hit by a Force Services cart being aggressively pushed by two Force Services employees, one of whom was named Victor, and that of Mr. Anazco, the only "Victor" working for Force Services, who states that he was not involved in the accident. As such, a question of material fact exists as to who pushed the cart into plaintiff. In fact, there is an issue as to whether Force Services needed supervisory control or notice of the condition at all, as the parties' deposition testimony does not conclusively demonstrate that Force Services' workers did not cause the accident. Thus, Force Services motion for summary judgment dismissing plaintiff's Labor Law § 200 claims against it is denied.

### C. Motions to Dismiss Cross-Claims

Chelsea/Cauldwell moves for summary judgment to dismiss Force Services' cross-claims against them. In addition, Cauldwell asserts cross-claims against Force Services for contribution,

**154352/2016  CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No. 002 003**

**Page 13 of 15**

[* 13]

13 of 15

common law indemnification, and contractual indemnification. Chelsea Dynasty asserts cross-claims against Force for common law indemnity, contribution, contractual indemnification, and breach of contract for failure to procure insurance. Force Services moves for summary judgment to dismiss defendants' cross-claims for indemnification and contribution against it. Plaintiff takes no position as to defendants' cross-claims.

However, all cross-claims asserted by Chelsea/Cauldwell against Force Services and by Force Services against Chelsea/Cauldwell are hereby dismissed, since the Court's granting of Chelsea/Cauldwell's motion for summary judgment dismissing plaintiff's Labor Law §§ 200 and 241 (6) claims against them results in the dismissal of both parties from this action, rendering any cross-claims asserted by and against them as moot.[5]

## IV. Conclusion

Accordingly, it is hereby

ORDERED that the motion for summary judgment of defendants Chelsea Dynasty and Cauldwell dismissing plaintiff's Labor Law claims against them is granted; and it is further

ORDERED that the cross-claims asserted by defendants Chelsea Dynasty and Cauldwell against defendant Force Services are hereby dismissed; and it is further

ORDERED that the motion for summary judgment of defendant Force Services dismissing plaintiff's claims against it is denied; and it is further

ORDERED that the cross-claims asserted by defendant Force Services against defendants Chelsea Dynasty and Cauldwell are hereby dismissed; and it is further

---

[5] A hearing was held on October 22, 2024 on Chelsea/Cauldwell's motion to reargue this Court's original decision and order dated January 12, 2024.

**154352/2016 CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No. 002 003**

[* 14]

ORDERED that any relief not expressly addressed has nonetheless been considered and is

hereby denied.

The foregoing constitutes the Order and Decision of the Court.

| 11/26/2024 | | | | | |
|---|---|---|---|---|---|
| **DATE** | | | HON. LESLIE A. STROTH | | **J.S.C.** |
| CHECK ONE: | | CASE DISPOSED | X | NON-FINAL DISPOSITION | |
| | | GRANTED | DENIED | GRANTED IN PART | X | OTHER |
| APPLICATION: | | SETTLE ORDER | | SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | | REFERENCE |

**154352/2016   CIRU, FELIX vs. CHELSEA DYNASTY, LLC**
**Motion No.  002 003**

**Page 15 of 15**

15 of 15