Ruisech v Structure Tone Inc. (2022 NY Slip Op 04941)

Ruisech v Structure Tone Inc.

2022 NY Slip Op 04941

Decided on August 16, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: August 16, 2022

Before: Manzanet-Daniels, J.P., Gische, Kern, Friedman, Shulman, JJ. 

Index No. 159007/13, 590013/14, 590202/14, 595439/18 Appeal No. 15983 Case No. 2021-00357 

[*1]Felipe A. Ruisech, et al., Plaintiffs-Respondents,
v
Structure Tone Inc., Initially Sued Herein as Structure Tone Global Services, Inc., et al., Defendants-Respondents-Appellants, CBRE, Inc., Defendant-Appellant-Respondent. Tishman Speyer Properties, L.P., et al., Third-Party Plaintiffs-Respondents-Appellants,
Tishman Speyer Properties, L.P., et al., Third Third-Party Plaintiffs-Appellants-Respondents,
v
A-Val Architectural Metal III, LLC, Third Third-Party Defendant-Respondent-Appellant.

Gallo Vitucci Klar LLP, New York (C. Briggs Johnson of counsel), for CBRE, Inc., appellant-respondent.
Barry McTiernan & Moore LLC, New York (Steven Aripotch of counsel), for Structure Tone Global Services, Inc., respondent-appellant/appellant-respondent.
Smith Mazure PC, New York (Louise Cherkis of counsel), for Tishman Speyer Properties, L.P., and 200 Park, LP, respondents-appellants/appellants-respondents.
Pisciotti Lallis Erdreich, White Plains (Charu Mehta of counsel), for A-Val Architectural Metal III, LLC, respondent-appellant.
The Barnes Firm, P.C., Rochester (Richard Amico of counsel), for respondents.

Order, Supreme Court, New York County (Paul A. Goetz, J.), entered December 14, 2020, which, to the extent appealed from as limited by the briefs, denied the motions of defendants 200 Park, L.P. (Park) and Tishman Speyer Properties, L.P. (together, P&T), CBRE, Inc., and Structure Tone Inc., i/s/h/a Structure Tone Global Services, Inc. (ST) for summary judgment dismissing plaintiffs' Labor Law § 241(6) claim, predicated on Industrial Code (12 NYCRR) § 23-1.7(d) and (e)(2) as against Park, CBRE, and ST and the Labor Law § 200 and common-law negligence claims as against them, denied P&T's motion for summary judgment on Tishman's contractual indemnification claim against CBRE, their contractual indemnification claims against ST and third-party defendant A-Val Architectural Metal III, LLC, and their common-law indemnification claims against CBRE, ST, and A-Val, granted CBRE's motion for summary judgment on its contractual indemnification claim against ST conditionally and denied its motion for summary judgment on its contractual indemnification claim against A-Val and its common-law indemnification claim against ST and dismissing all common-law indemnification and contribution claims as against it, granted ST's motion for summary judgment on its contractual indemnification claim against A-Val conditionally and on the issue of liability on its breach of contract claim against A-Val for failure to procure insurance, and denied A-Val's motion for summary judgment dismissing all claims for common-law indemnification and failure to procure insurance as against it, unanimously modified, on the law, to grant Park, CBRE, and ST summary judgment dismissing the Labor Law § 241(6) claim as against them, to grant P&T, CBRE and ST summary judgment dismissing the Labor Law § 200 claim and common-law negligence claims against them, to grant Tishman's contractual indemnification claim against CBRE, grant CBRE summary judgment on its contractual indemnification claim against ST, to grant ST summary judgment on its contractual indemnification claim against A-Val and as to liability on its breach of contract claim against A-Val for failure to procure insurance, and to grant A-Val summary judgment dismissing the common-law negligence claims as against it, and otherwise affirmed, without costs.
This personal injury action stems from a construction site accident at the building owned by Park and managed by Tishman. CBRE leases several floors in the building and it entered into a contract with ST to serve as the general contractor for renovation work to be performed in its leased space on the 19th floor. ST, in turn, subcontracted with A-Val, plaintiff's employer, to perform arch metal and glass work.
Plaintiff's accident occurred as he and three other A-Val workers were attempting to lift and install a heavy interior glass wall divider into an aluminum track that had been cut into the concrete floor by other A-Val workers. When plaintiff stepped forward to place the glass [*2]into the track, he stepped onto "minute" pebbles near the track. His right foot slipped forward a few inches, but he did not fall. Plaintiff claims that he sustained injuries, not only because of pebbles he slipped on, but also because of A-Val's decision to remove one worker from his team when he undertook to move the glass.
Supreme Court dismissed the Labor Law §241(6) claim, only as against Tishman on the basis that it was not Park's statutory agent, for purposes of the Labor Law. The Labor Law § 241(6) claim should be dismissed as against Park, CBRE, and ST as well. Neither of the Industrial Code regulations that plaintiff relies on apply to the accident. The floor was not in "a slippery condition" nor were the pebbles a "foreign substance which may cause slippery footing" within the meaning of Industrial Code § 23-1.7(d) (see Cruz v Metropolitan Tr. Auth., 193 AD3d 639, 640 [1st Dept 2021]). Section 23-1.7 (e)(2) of the Industrial Code also does not apply as this was not a passageway, within the meaning of the regulation. In any event, the pebbles were debris that were an integral part of the construction work. The integral to the work defense applies to things and conditions that are an integral part of the construction, not just to the specific task a plaintiff may be performing at the time of the accident (see Krzyzanowski v City of New York, 179 AD3d 479, 480-481 [1st Dept 2020]).
Plaintiff's Labor Law § 200 and common-law negligence claims should also be dismissed as against P&T, CBRE and ST as well. "Claims for personal injury under the statute and the common law fall into two broad categories: those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed" (Cappabianca v Skanska USA Bldg. Inc., 99 AD3d 139, 143-144 [1st Dept 2012]). Where the injury arises from the manner in which the work was performed, the owner or general contractor is not liable, unless "it actually exercised supervisory control over the injury-producing work" (see id.). CBRE and ST provide uncontroverted evidence that they did not create the condition at issue, nor did they have notice of the condition. CBRE and ST also established that they had no control over the means and methods plaintiff used in performing the work. Park established that it was an out-of-possession landlord and although it had a right of re-entry to maintain and repair, it was not involved in the project and there are no allegations that the conditions alleged to have caused plaintiff's accident constituted a significant structural or design defect that violated a specific safety statute (see Dirschneider v Rolex Realty Co. LLC, 157 AD3d 538, 539 [1st Dept 2018]). As for the Labor Law § 241 (6) claim, Tishman established that it was not Park's statutory agent, for purposes of the Labor Law (see e.g. Venter v Cherkasky, 200 AD3d 932, 932-933 [2d Dept 2021]). Although Orsini, ST's general manager, did regular [*3]walk throughs of the work site, regular inspection of the site or the authority to stop any unsafe work is a general level of supervision that is not sufficient to warrant holding ST liable under Labor Law § 200 (Singh v 1221 Ave. Holdings, LLC, 127 AD3d 607, 608 [1st Dept 2015]). The concrete pebbles were not an existing defect or dangerous condition of the property, but rather were created by plaintiff's employer's work and the manner in which it was performed (see also Dalanna v City of New York, 308 AD2d 400 [1st Dept 2003]).
At one point Metropolitan Life Insurance Corp. (MLIC) owned the building and the original, 1986 lease for the 19th floor identifies MLIC as the "landlord." The building was later sold to Park and starting with the eighth modification of the lease, Park is listed as the "landlord." The eighth lease modification provides that CBRE shall indemnify the "Indemnities," who are defined as including "Landlord [and] Landlord's agent," against claims: "(i) arising from any act, omission or negligence of any Tenant Parties," but limited to breaches, violations or nonperformances under the lease. The term "Landlord's agents" is also undefined in the lease.
CBRE does not address, let alone oppose, P&T's argument that the term "Landlord's agents" as used in the indemnification provision of its lease, although not defined, is broad enough to encompass Tishman (the landlord's managing agent). However, as argued by CBRE, this provision has a negligence trigger. Indemnity is triggered only where the claims "arise from" CBRE's "act, omission or negligence" and in limited circumstances (see Arias v Sanitation Salvage Corp., 199 AD3d 554, 557 [1st Dept 2021]). In light of our holding that CBRE is free from negligence, the indemnification provision of the lease was not triggered. Therefore, neither Tishman nor Park have shown that they are entitled to contractual indemnification by CBRE under the terms of the lease.
Although that 2009 eighth lease modification predates the 2010 contract between CBRE and ST, the CBRE/ST contract references only the original 1986 lease that does not define "landlord" as Park, but rather as MLIC. The CBRE/ST contract provides, in relevant part, that ST must indemnify CBRE, the "Landlord" and their "agents" against claims "arising out of, in connection with or on account of (i) any act, omission, fault or neglect of [ST], or any Subcontractor . . . ." As concerns CBRE's argument that it is entitled to indemnification by ST, we have found that ST is free from negligence. However, plaintiff's claims against CBRE "aris[e] out of" negligent acts by its subcontractor, A-Val, triggering the indemnification provision. Consequently, ST is vicariously liable for the acts of A-Val and, therefore, must indemnify CBRE, as the CBRE/ST contract provides.
P&T were properly denied summary judgment on their contractual indemnification claims against ST under the CBRE/ST contract and its contract with A-Val. The indemnification [*4]clause in CBRE/ST's contract provides that ST must indemnify CBRE, the "Landlord," and their "agents" against claims:
"resulting from or in any manner arising out of, in connection with or on account of (i) any act, omission, fault or neglect of [ST], or any Subcontractor of, . . . [ST], or anyone employed by any of them in connection with the Work or anyone for whose acts any of them may be liable"
ST's contract with A-Val consists of a series of purchase orders and a Blanket Insurance/Indemnity Agreement (insurance agreement). The reverse side of the purchase orders contains an indemnification clause requiring A-Val to indemnify ST against claims "arising in whole or in part and in any manner from the acts, omissions, breach or default of [A-Val] . . . in connection with the performance of any work by [A-Val] pursuant to this Purchase Order." The insurance agreement contains substantially similar language.
As we have seen, the CBRE/ST contract does not identify Park as the landlord and it only refers to the landlord's "agents," without any further description of who that means, but who the landlord and agents are can be inferred from the lease. Here, however, the purchase orders and the insurance agreement simply use the term "Owner," without identifying who that is. To the extent that P&T argues that we should infer that "Owner" has the same meaning as in the CBRE/ST contract, that contract defines "Owner" not as Park or Tishman, but rather as CBRE, the tenant. In any event the CBRE/ST contract is not incorporated by reference nor is it an exhibit to any of these documents. Since the language of the parties is not clear enough on this record to enforce an obligation against ST or A-Val to indemnify P&T, and "we are unwilling to rewrite the contract and supply a specific obligation the parties themselves did not spell out," P&T's motion for summary judgment on its contractual indemnification claim against ST and A-Val was properly denied (Tonking v Port Auth. of N.Y. & N.J., 3 NY3d 486, 490 [2004]).
CBRE has also failed to show that it is entitled to contractual indemnification from A-Val, for the same reason that we find that P&T is not entitled to contractual indemnification from A-Val, namely the ambiguity of the undefined term "Owner" in the purchase orders and insurance agreement (see Tonking, 3 NY3d at 490).
Finally, P&T did not establish their prima facie entitlement to common-law indemnification against A-Val, plaintiff's employer. P&T solely relies on plaintiffs' bills of particulars. Since they do not allege any injuries that qualify as grave under Workers' Compensation Law § 11, P&T failed to eliminate all issues of fact as to whether plaintiff's injuries breach Workers' Compensation Law § 11's "grave injury" threshold. (see Granite State Ins. Co. v Moklam Enters., Inc., 193 AD3d 616 [1st Dept 2021]).
ST is entitled to an order of unconditional, full indemnification by A-Val because
there is no evidence that Structure Tone [*5]was negligent in any degree (Sanchez v
404 Park Partners, LP, 168 AD3d 491, 493 [1st Dept 2019]). As concerns the failure-to-procure-insurance claims, the only evidence concerning what insurance A-Val procured is certificates of insurance. A certificate of insurance may be sufficient to raise an issue of fact, but standing alone, it does not prove coverage as a matter of law (see Prevost v One City Block LLC, 155 AD3d 531, 536 [1st Dept 2017]). Thus, the court correctly denied A-Val summary dismissal of all claims for failure to procure insurance as against it, but should have denied so much of ST's motion for summary judgment on the issue of liability on its breach of contract claim against A-Val for failure to procure insurance. Finally, given the documentary and testimonial evidence that plaintiff did not suffer a "grave injury" within the meaning of Workers' Compensation Law § 11, but also that he received workers' compensation benefits from A-Val, A-Val should have been granted summary judgment dismissing the common-law indemnification claims as against it (see e.g. Clarke v Empire Gen. Contr. & Painting Corp., 189 AD3d 611, 612-613 [1st Dept 2020]).
We have considered the defendants' remaining arguments and we find them unavailing.THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: August 16, 2022