Rosa v 47 E. 34th St. (NY), L.P. (2022 NY Slip Op 05144)

Rosa v 47 E. 34th St. (NY), L.P.

2022 NY Slip Op 05144

Decided on September 13, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: September 13, 2022

Before: Manzanet-Daniels, J.P., Kapnick, Shulman, Rodriguez, Pitt, JJ. 

Index No. 23128/13E, 43128/14E Appeal No. 16023-16023A Case No. 2021-00538, 2021-00803 

[*1]Ana Rosa, as Administrator of the Estate of Danny Rosa, Plaintiff-Appellant-Respondent,
v
47 East 34th Street (NY), L.P., et al., Defendants-Respondents-Appellants.
47 East 34th Street (NY), L.P., et al., Third-Party Plaintiffs-Respondents-Appellants,
v
June Electrical Corp., et al., Third-Party Defendants-Respondents-Appellants. [And a Second Third-Party Action]

Pollack, Pollack, Isaac & DeCicco, LLP, New York (Christopher Soverow of counsel), for appellant-respondent.
Shaub, Ahmuty, Citrin & Spratt LLP, Lake Success (Christopher Simone of counsel), for 47 East 34th Street (NY), L.P. and CIM Group, L.P., respondents-appellants.
Ahmuty Demers & McManus, Albertson (Nicholas P. Calabria of counsel), for June Electric Corp., respondent-appellant.
Wilson Elser Moskowitz Edelman & Dicker LLP, White Plains (Eliza M. Scheibel of counsel), for Bridgestreet Corporate Housing, LLC, respondent-appellant.

Orders, Supreme Court, Bronx County (LlinÉt M. Rosado, J.), entered January 14, 2021, which, to the extent appealed from as limited by the briefs, granted so much of the motion of defendants/third-party plaintiffs 47 East 34th Street (NY), L.P. and CIM Group, L.P. and the separate motion of defendant/third-party defendant Bridgestreet Corporate Housing, LLC for summary judgment dismissing plaintiff's Labor Law §§ 240(1) and 241(6) claims as against them, denied so much of 47 East 34th and CIM's motion, Bridgestreet's separate motion, and the cross motion of defendant/third-party defendant June Electrical Corp. for summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence claims as against them, and denied so much of June Electrical's cross motion for summary judgment dismissing the common-law indemnification and contribution claims as against it, unanimously modified, on the law, to deny so much of 47 East 34th and CIM's motion and Bridgestreet's separate motion as was for summary judgment dismissing plaintiff's Labor Law §§ 240(1) and 241(6) claims as against them, and to reinstate those causes of action, and otherwise affirmed, without costs.
The underlying work-related accident occurred in the morning hours of January 31, 2013, in the electrical room on the roof of a 36-story, 110-unit residential building located at 47 East 34th Street in Manhattan. At that time, Bridgestreet, a tenant and the building manager of the premises, held a master lease for all of the residential units and was in the business of providing temporary luxury housing for employees of corporate clients. At the time of the accident, the building was fully leased. Arsenio "Sammy" Cuevas was employed by Bridgestreet as the building's resident manager, who, among other responsibilities, oversaw any projects, construction, or contracting work being done at the building.
On the morning of the accident, June Electrical directed decedent Danny Rosa, its employee, to correct two items on a punch list from a contract that 47 East 34th and June Electrical had executed the prior year in order to correct outstanding items and totally complete the construction of the building. As relevant here, one of these items was to properly terminate the bus duct (a main trunk for electricity) in the roof bulkhead electrical room.
After the other punch list task was completed in the roof boiler room, Cuevas accompanied Rosa and his helper and unlocked the electrical room containing the bus duct. For this task, Rosa planned to use an improvised foil cap and cardboard insulation. However, Cuevas left to get rubber insulation from a nearby hardware store, and allegedly told Rosa not to start work until he returned and powered down the building's electricity. During Cuevas's absence, plaintiff alleges that Rosa retrieved a 10-foot A-frame ladder from the boiler room and began work on the energized bus duct, about 15 to 20 feet above the floor. Within minutes, an arc explosion [*2]caused a partial power outage for most of the building. Rosa was electrocuted and thrown off the ladder. Despite his extensive injuries Rosa managed to walk down 36 flights to the ground floor, where he was taken by ambulance to Weill-Cornell Hospital. He remained hospitalized for months, undergoing extensive treatment for his burns and related sequelae. Rosa died nine months later.
In two separate, nearly identical orders, Supreme Court, principally relying on Cuevas's deposition testimony, concluded that there were no issues of fact foreclosing summary judgment in favor of 47 East 34th, CIM, and Bridgestreet dismissing plaintiff's claims under Labor Law §§ 240(1) and 241(6), the latter predicated on Industrial Code (12 NYCRR) § 23-1.13(b)(4). Plaintiff appeals these determinations, and we now modify to reinstate plaintiff's claims.
To begin, the record here is inconclusive as to whether CIM had any ownership interest in the building at the time of the accident. Accordingly, Supreme Court properly found that an issue of fact exists as to whether CIM is an owner of the building and is therefore subject to accompanying Labor Law obligations.
Next, issues of fact remain as to the manner in which Rosa's accident occurred. Our review of the record reveals that, according to Cuevas — the primary contact and authority for communicating with and supervising contractors coming into the building — Rosa was a "cowboy" who responded to June Electrical's call to perform electrical work on energized wire circuitry "all the time." In other words, Cuevas was personally aware of Rosa's work history and ostensible penchant for taking these types of risks, actually saw Rosa perform his electrical work this way, and evidently overlooked Rosa's work on live electrical equipment. In addition, Cuevas acknowledged that terminating the bus duct on the day of the accident was a priority, as the building was going to undergo a critical building inspection the next day that would affect its certificate of occupancy. As noted, the work at issue pertained to this 36-story building's main trunk of electricity. Against this backdrop, despite allegedly warning Rosa not to start working until he returned with the rubber insulation barrier and powered down the building, Cuevas did not lock the door to the roof bulkhead electrical room that invited just such an accident as happened. Parenthetically, we note that neither the barrier nor its proof of purchase have been produced.
Bridgestreet's Assistant General Manager, Kristen Hewett, who at the time of the relevant events was known as Kristen Zigo, also made clear that certain notice protocols were required to be followed in the event of major and minor service interruptions at the building. As to major interruptions, the building's onsite team (consisting of Cuevas, a porter, and front desk concierge) was required to provide advance notice to Zigo and her supervisor, who would then notify the tenants as appropriate. For minor [*3]service disruptions, the onsite team was required to generate and post flyers in order to notify the tenants.
In this case, regardless of whether an electrical service interruption would have been major or minor, if Cuevas truly planned to power down this fully occupied 36-story building, the onsite team would have been required to provide advance notice to the tenants. Indisputably, neither of those notice protocols were implemented before or on the day of the accident. This raises an issue of material fact as to whether the building's electricity would actually have been turned off before Rosa was to work on the bus duct; a reasonable factfinder could instead conclude, contrary to Cuevas's testimony, that Rosa had been compelled to perform work on the energized bus duct.
In addition to the direct testimonial evidence, the record on appeal also includes the deposition testimony of Rosa's daughter, plaintiff Ana Rosa. 47 East 34th, CIM, and Bridgestreet argue that plaintiff should be precluded from now relying on hearsay statements in her deposition testimony that she did not raise before the motion court. While plaintiff referred to those hearsay statements in opposition to defendants' respective summary judgment motions, plaintiff now raises on appeal a hearsay exception-based argument — namely, that Supreme Court ignored her testimony about her conversations with Cuevas, whose statements constitute party admissions.
When "a party raises a legal issue for the first time on appeal, as long as the issue is determinative and the record on appeal is sufficient to permit review, this Court may consider the new argument" (Watson v City of New York, 157 AD3d 510, 511 [1st Dept 2018]). We may also consider this testimony in our discretion because 47 East 34th and CIM also relied on it in support of their summary judgment motion (see Khaimov v City of New York, 199 AD3d 455, 456 [1st Dept 2021]; St-Cyr v New York City Tr. Auth., 194 AD3d 524 [1st Dept 2021] [the plaintiff waived hearsay objections to evidence by relying on it in support of his own motion]). We see this as a "situation in which [47 East 34th, CIM, and, indirectly, Bridgestreet], in support of their own motion, submitted hearsay statements raising a triable issue of fact and, in effect, adopted [those statements] as accurate" (Shaw v Rosha Enters., Inc., 129 AD3d 1574, 1576 [4th Dept 2015] [second alteration in original, internal quotation marks omitted]).
As to the substance of the statements, at her deposition, plaintiff testified to postaccident conversations that Cuevas had with her when he visited Rosa in the hospital, when he admitted to plaintiff that Rosa had to perform the bus duct work without shutting down the electricity because of the imminently scheduled building inspection, so as not to inconvenience the tenants, and to avoid any complaints attendant to a service interruption, such as a lack of elevator service. Cuevas never denied either having those conversations with [*4]plaintiff in the hospital or making those statements.[FN1] Thus, Cuevas's statements are not hearsay, but opposing party admissions (see Delgado v Martinez Family Auto, 113 AD3d 426, 427 [1st Dept 2014]; see also Grieve v MCRT Northeast Constr., LLC, 197 AD3d 623, 625 [2d Dept 2021] [issue of fact remained precluding summary judgment where party admission presented conflicting account of the cause of the plaintiff's injuries]; Guide to NY Evid rule 8.03, Admission by a Party, available at https://perma.cc/AAA4-LFQ5 [cached June 27, 2022]). In any event, assuming hypothetically that these statements were inadmissible hearsay, they may still be considered as they are not the only evidence in this record that the electricity was not shut down when Rosa performed the duct work (Clarke v Empire Gen. Contr. & Painting Corp., 189 AD3d 611, 612 [1st Dept 2020]).
What is more, not only is Cuevas's deposition testimony, which was taken after plaintiff's deposition, inconsistent with his postaccident conversations with plaintiff, but his testimony also appears tailored to totally fault Rosa for his accident and absolve Bridgestreet, 47 East 34th, and CIM, his respective employers. Plaintiff also argues that 47 East 34th, CIM, and Bridgestreet failed to provide Rosa with a ladder or harness, in violation of Labor Law § 240(1), and indeed, it is undisputed that Rosa was not provided with a ladder, harness or any other safety equipment. Cuevas stated that he never directed Rosa or his helper to take the ladder from the boiler room and never discussed any need for a ladder with Rosa when he left him in the electrical room on the roof. However, since the bus duct was located approximately 15 to 20 feet above the roof floor, a ladder was necessary for the work. Moreover, Cuevas knew that a 10-foot A-frame ladder was available in the nearby boiler room, which Rosa had access to minutes earlier when addressing another punch list item. Consequently, Rosa had no option but the ladder from the boiler room, which he allegedly obtained after jimmying the boiler room's unsecured lock.
Here, not only is there an issue of fact as to "whether the ladder's purported inadequacy or the absence of additional safety devices was a proximate cause of [Rosa's] accident[,]" but "questions of fact exist as to whether 'the ladder failed to provide proper protection,' [and] whether '[Rosa] should have been provided with additional safety devices' . . . " (Cutaia v Board of Mgrs. of the 160/170 Varick St. Condominium, 38 NY3d 1037, 1039 [2022], quoting Nazario v 222 Broadway, LLC, 28 NY3d 1054, 1055 [2016]). Notably, Labor Law § 240(1) "imposes upon owners, contractors and their agents a nondelegable duty that renders them liable regardless of whether they supervise or control the work" (Barreto v Metropolitan Transp. Auth., 25 NY3d 426, 433 [2015]).
With respect to plaintiff's Labor Law § 241(6) claim, Industrial Code § 23-1.13(b)(4) provides, "[n]o employer shall suffer or permit an [*5]employee to work in such proximity to any part of an electric power circuit that he may contact such circuit in the course of his work unless the employee is protected against electric shock by de-energizing the circuit and grounding it or by guarding such circuit by effective insulation or other means" (accord DelRosario v United Nations Fed. Credit Union, 104 AD3d 515, 516 [1st Dept 2013]). It is readily apparent from the record that Rosa was placed in the position of coming into contact with the live bus duct.
In sum, we find that there are material issues of fact as to whether Rosa was the sole proximate cause of his accident, and thus plaintiff's Labor Law §§ 240(1) and 241(6) claims against 47 East 34th, CIM, and Bridgestreet should not have been dismissed.
Similarly, issues of fact preclude summary disposition of plaintiff's claims based on common-law negligence and Labor Law § 200. Under Labor Law § 200, which codifies an owner's or general contractor's common-law duties of care, there are "two broad categories" of personal injury claims: "those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed" (Cappabianca v Skanska USA Bldg. Inc., 99 AD3d 139,144 [1st Dept 2012]). With respect to the former, "liability attaches if the owner or general contractor created the condition or had actual or constructive notice of it" (id.; see Cackett v Gladden Props., LLC, 183 AD3d 419, 421 [1st Dept 2020]; cf. Dirschneider v Rolex Realty Co. LLC, 157 AD3d 538, 539 [1st Dept 2018] [Labor Law § 200 and common-law negligence claims should have been dismissed as against out-of-possession landlord with right of re-entry that was not involved with the project or on site, and thus had no actual notice of dangerous conditions]). This case could also be one of those "rare cases [where] both theories of liability may be implicated" (Grasso v New York State Thruway Auth., 159 AD3d 674, 678 [2d Dept 2018] [internal quotation marks omitted]).
Here, there is an issue of fact as to whether either 47 East 34th or CIM had actual or constructive notice of the dangerous uncapped bus duct. For example, the contract between 47 East 34th and June Electrical required the correction of two items on a punch list, including properly terminating the bus duct. That contract refers to 47 East 34th as CIM. Zigo testified that she believed CIM owned the building, and Cuevas testified that he did not know whether CIM was involved with the building at the time of Rosa's accident. As to Bridgestreet, which was in possession of the building, there is no dispute that it was aware of the live bus duct and the risk it posed.
With respect to the means and methods theory of Labor Law § 200 and common-law negligence liability, there is no indication in the record that 47 East 34th and CIM, who were not on site at the time of the accident, directly supervised or controlled the means and methods of Rosa's [*6]work. By contrast, Cuevas, Bridgestreet's resident manager, admittedly directed the means and methods of the work by instructing Rosa not to use cardboard as a barrier between the cap and bus duct and to wait until he returned with a rubber barrier to commence the work. Accordingly, Supreme Court correctly denied defendants summary judgment dismissing plaintiff's Labor Law § 200 and common-law negligence claims.
Finally, as the motion court correctly concluded, June Electrical did not establish its prima facie entitlement to summary judgment dismissing 47 East 34th and CIM's third-party common-law indemnification and contribution claims. Although June Electrical relies heavily on a prior Supreme Court order that found no basis for plaintiff to assert a wrongful death claim, that prior order never addressed whether Rosa sustained a grave injury. Further, June Electrical failed to submit admissible evidence eliminating all issues of fact as to whether Rosa suffered a grave injury under Workers' Compensation Law § 11. Significantly, the Third Department, in affirming the Workers' Compensation Board's determination that Rosa was entitled to workers' compensation benefits as June Electrical's employee, noted at the outset that, "[a]t a hearing before a Workers' Compensation Law Judge . . . , the parties acknowledged that [Rosa] had passed away as a result of his injuries" (Matter of Rosa v June Elec. Corp., 140 AD3d 1353, 1354 [3d Dept 2016], lv denied 28 NY3d 910 [2016]). Thus, June Electrical's
summary judgment motion was properly denied.
We have considered the parties' remaining contentions and find them unavailing. 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: September 13, 2022

Footnotes

Footnote 1: Based on the totality of the record, there is no doubt that plaintiff meant Cuevas when she used the term "super" in her deposition testimony.