## Waldowsky v 15 Hudson Yards Condominium

2024 NY Slip Op 32047(U)

June 18, 2024

Supreme Court, New York County

Docket Number: Index No. 156741/2019

Judge: Lori S. Sattler

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

**PRESENT:**   **HON. LORI S. SATTLER**  **PART**   **02M**

*Justice*

-------------------------------------------------------------------------------X

RICHARD WALDOWSKY, MARIA WALDOWSKY,

Plaintiff,

- v -

15 HUDSON YARDS CONDOMINIUM, RELATED HUDSON YARDS MANAGER LLC, SHED NYC, INC., SAFWAY ATLANTIC, TUTOR PERINI BUILDING CORP.

Defendant.

-------------------------------------------------------------------------------X

**INDEX NO.**   156741/2019

**MOTION DATE**   08/16/2023, 08/16/2023

**MOTION SEQ. NO.**   006 007

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 006) 90, 91, 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105, 106, 107, 108, 142, 144, 146, 148, 150, 152, 161, 162, 163, 164, 165, 166, 167, 168, 169, 170, 171, 178, 179, 181, 182, 183, 184, 185, 186, 187, 188, 192, 194

were read on this motion to/for                    SUMMARY JUDGMENT(AFTER JOINDER                    .

The following e-filed documents, listed by NYSCEF document number (Motion 007) 109, 110, 111, 112, 113, 114, 115, 116, 117, 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 143, 145, 147, 149, 151, 153, 154, 155, 156, 157, 158, 159, 160, 172, 173, 174, 175, 177, 180, 189, 190, 191, 193

were read on this motion to/for                    JUDGMENT - SUMMARY                    .

Plaintiffs Richard Waldowsky and Maria Waldowsky ("Plaintiffs") commenced this action alleging violations of Labor Law sections 240(1), 241(6), and 200 stemming from an accident at a construction site at Hudson Yards Tower D, located at 553 West 30th Street ("job site"). Richard Waldowsky ("Waldowsky") was a laborer on the job site. Defendants 15 Hudson Yards Condominium ("15 Hudson Yards") and Related Hudson Yards Manager LLC ("Related") were the alleged property owners and Defendant Tutor Perini Building Corp ("Tutor Perini") was the general contractor (collectively, "Hudson Yards Defendants"). Defendant Safway Atlantic ("Safway") was a subcontractor who installed a chain link fence with a gate which was involved in the accident. The action was previously dismissed against Shed NYC, Inc. (NYSCEF Doc. No. 38). Safway asserts crossclaims for common law indemnification and

[* 1]

contribution against the Hudson Yards Defendants.  All parties now move for summary judgment on all claims.  The Hudson Yards Defendants also move to amend their Answer to add crossclaims against Safway.  The motions are consolidated for disposition.

The accident occurred on December 13, 2017.  Waldowsky was a laborer working from non-party Cross Country Construction ("Cross Country") and on that morning he was salting the job site's truck area due to below freezing temperatures (NYSCEF Doc. No. 98, Waldowsky EBT, 47, 49-50).  The area was enclosed by a chain link fence with a twenty-foot-long, eight-foot-high gate which was installed by Safway (NYSCEF Doc. No. 101, O'Brien EBT, 18-19).  The accident occurred while the gate was open and wind caused it to swing toward Waldowsky, knocking him off his feet and causing him to fall to the ground (Waldowsky EBT at 67).

At his deposition, Waldowsky testified: "when somebody opened the fence, it was never secure.  On days when there was wind, it would get blown and somebody would get hurt.  A few people did" (*id.* at 29).  Workers routinely used tie wire, cinder blocks, barrels of hay, or other heavy objects on hand to secure the gate but "it kept blowing open on the days with the high winds" (*id.* at 32, 66).  Cross Country's shop steward Barry O'Brien also testified to seeing the gate swinging and that the workers "used to have to tie it with wire or rope and it would just break out of that sometimes and swing open" (O'Brien EBT, at 23, 33).

Waldowsky further testified that at the job site orientation, he was told that if he saw something unsafe, he was to report it to his foreman if it was related to his Cross Country's work, and otherwise to the general contractor (Waldowsky EBT at 26).  Prior to the accident, he had reported the issue of the gate not being secure, specifically to the general site safety manager and to the foreman for Safway (*id.* at 26-27, 29, 60).  He also asked the site safety manager if a hole could be drilled in the ground so that the gate could be secured when it was in the open position

[* 2]

(*id.* at 30). O'Brien also said he complained about the gate to the Cross Country foreman, who told him they would let "the scaffolding company" know, but he never complained directly to Safway or the Hudson Yards Defendants (O'Brien EBT at 23).

Tutor Perini's Project Executive for the project testified that he had no oversight over Cross Country employees and could not remember speaking to anyone about the accident until being contacted by attorneys (NYSCEF Doc. No. 99, Lorimer EBT, 26, 31-32). He stated: "our safety engineer would walk the site, but I don't believe he had a daily inspection. I believe he walked with the site safety manager who had the daily form that he filled out" (*id.* at 77-78). The site safety manager was employed by subcontractor, non-party Pro Safety (*id.* at 78).

According to a Safway project manager for the site, Eoghan Ryan, Safway performed work on the job site related to scaffolds, temporary fences, and hoists (NYSCEF Doc. No. 100, Ryan EBT, 14). This work was ongoing as scaffolds and the like were installed and modified continuously as needed (*id.* at 17; *see also* O'Brien EBT at 43). Ryan did not work on the job site at the time of the accident, however when asked about best practices for installing such a fence, he stated, "we have typical fasteners that we would use to anchor fences in place. As far as keeping it open or closed, it's often -- we might give them a chain to keep it locked, sometimes they would provide their own chain and lock, but once we install it, it's kind of handed over to the end user to look after" (Ryan EBT at 35-36). In this case, the end user "would have been Tutor Perini/Related" (*id.* at 36). He testified that some fence gates installed by Safway have a mechanism attached to the gate that would help keep it open, such as a bolt hole drilled in the ground, which would either be drilled by Safway or by another subcontractor at the direction of the general contractor or construction manager (*id.* at 43-45).

[* 3]

Ryan testified that typically a general contractor would tell Safway where fences were needed (*id.* at 80). He thought Safway might have engineer's drawings of gates it installed, but did not know whether an instruction to a install a gate that would be secured in the open position would have been reflected in such a drawing, could not remember whether he had seen a gate installed by Safway with such a specification, and did not know whether the company had drawings of the subject fence in as-built condition (*id.* at 86-88). He conceded he had a limited understanding of best practices for gate installation, as he is "in management" and not "a field guy" (*id.* at 98-100). He believed wind patterns are considered when determining the proper fence to be installed, and that New York City has wind zones, but he did not know whether Tower D was in one, whether wind considerations were factored in when constructing this gate, or how the design or installation would differ (*id.* at 101-104).

On a motion for summary judgment, the moving party "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (*Winegrad v New York Univ. Med. Center*, 64 NY2d 851, 853 [1985], citing *Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]). Should the movant make its prima facie showing, the burden shifts to the opposing party, who must then produce admissible evidentiary proof to establish that material issues of fact exist (*Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]).

Plaintiffs seek summary judgment on their Labor Law §§ 240(1), 241(6), 200, and common law negligence claims while all defendants seek summary judgment dismissing these claims. Labor Law § 240(1) "places a nondelegable duty on owners, contractors, and their agents to furnish safety devices giving construction workers adequate protection from elevation-related risks" (*Hill v City of New York*, 140 AD3d 568, 569 [1st Dept 2016]). It is well-

established that section 240(1) "was designed to prevent those types of accidents in which the scaffold, hoist, stay, ladder or other protective device proved inadequate to shield the injured worker from harm directly flowing from the application of the force of gravity to an object or person" (*Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 501 [1993] [emphasis omitted]). "The single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]). It is undisputed that Waldowsky was standing on the ground when wind caused a gate to swing laterally, knocking him over (Waldowsky EBT at 67-68). The Court finds that the accident is outside of the scope of section 240(1), therefore this cause of action must be dismissed.

Labor Law § 241(6) "imposes a nondelegable duty of reasonable care upon owners and contractors to provide reasonable and adequate protection to persons employed in . . . all areas in which construction, excavation or demolition work is being performed" (*Rizzuto v L.A. Wenger Constr. Co.*, 91 NY2d 343, 348-349 [1998]). To establish a defendant's liability under section 241(6), "a plaintiff must show that a specific, applicable Industrial Code regulation was violated and that the violation caused the complained-of injury" (*Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 146 [1st Dept 2012], citing *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494 [1993]). Plaintiffs assert violations of Industrial Code §§ 23-1.7(d), (e)(1), and (e)(2).

12 NYCRR § 23-1.7(d) relates to slipping hazards, requiring that "[i]ce, snow, water, grease and any other foreign substance which may cause slippery footing shall be removed, sanded or covered to provide safe footing." Subsections (e)(1) and (2) relate to tripping and other hazards in passageways and working areas respectively and require the removal of sharp objects, accumulations of dirt and debris, and scattered tools and materials from these areas. As

it is undisputed that Plaintiff was knocked over by an unsecured gate blown by wind, these sections are inapplicable. Additionally, the claimed building code violations do not provide a basis for liability under section 241(6) (*Alberto v DiSano Demolition Co., Inc.*, 194 AD3d 607, 608 [1st Dept 2021]). Therefore, Plaintiffs' section 241(6) cause of action must be dismissed.

Labor Law § 200 codifies the common law duty of owners and general contractors to provide a safe workplace to construction site workers (*Comes v NY State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]). Owners and general contractors may be held liable for injuries caused by a dangerous premises condition for which they had actual or constructive notice (*DeMaria v RBNB 20 Owner, LLC*, 129 AD3d 623, 625 [1st Dept 2015]).

With respect to 15 Hudson Yards, the Hudson Yards Defendants annex an affidavit of Gregory Gushee, the vice president of the condominium's board of managers (NYSCEF Doc. No. 193) who states that 15 Hudson Yards has never had an ownership interest in the property and did not hire any contractors to work on the job site. No other evidence was presented with respect to the involvement of 15 Hudson Yards. Accordingly, Plaintiffs' § 200 and common law negligence claims are dismissed as to 15 Hudson Yards.

The Hudson Yards Defendants also annex an affidavit of Alexis Kremen, vice president of Related, who likewise states that Related has never had an ownership interest in the property and did not hire any contractors to work on the job site (NYSCEF Doc. No. 137). However, issues of fact exist as to Related's involvement. Waldowsky, O'Brien, and Ryan named them as an owner of the property (Waldowsky EBT at 24, 36; O'Brian EBT at 12; Ryan EBT at 16) and annexed the Incident Report Form appears on Related letter head (NYSCEF Doc. No. 102).

Additionally, as reflected in the testimony of all the deposed witnesses, issues of fact exist as to whether Related and Tutor Perini had actual or constructive notice of the gate's

[* 6]

deficiency. Both Waldowsky and O'Brien made complaints to multiple supervisors prior to the accident and testified to workers unsuccessfully taking their own measures to secure the gate. Whether these complaints were conveyed to Related and/or Tutor Perini, or whether the dangers posed by the gate were or should have been discovered during the daily safety inspections put into place by Tutor Perini are issues of fact requiring the denial of both Plaintiffs' and the Hudson Yards Defendants' motions as to the section 200 and common law negligence claims.

Safway argues these claims should be dismissed as against it because it was neither an owner nor general contractor on the project. It is well settled that subcontractors are statutory agents of general contractors, and may be held liable pursuant to Labor Law § 200 and under a theory of common law negligence for injuries caused by a dangerous condition it caused or created (*see, e.g., Hewitt v NY 70th St, LLC*, 187 AD3d 574, 575 [1st Dept 2020]; *DeMaria*, 129 AD3d at 625; *O'Connor v Lincoln Metrocenter Partners, L.P.*, 266 AD2d 60, 61 [1st Dept 1999]). The deposition testimony raises triable issues of fact as to whether the installation of the fence without a mechanism for securing its gate was negligent in and of itself and/or whether Safway should have added such a mechanism any some point thereafter. Therefore, Plaintiffs' and Safway's motions as to the section 200 and common law negligence claims are denied.

The Hudson Yards Defendants and Safway also seek summary judgment on Safway's common law indemnification crossclaim. A party is entitled to common law indemnification where it shows "(1) that it has been held vicariously liable without proof of negligence or actual supervision on its part; and (2) that the proposed indemnitor was either negligent or exercised actual supervision or control over the injury-producing work" (*Naughton v City of New York*, 94 AD 3d 1, 11 [1st Dept 2012], citing *McCarthy v Turner Constr., Inc.*, 17 NY 3d 369, 377-378 [2011]). As the section 240(1) and 241(6) claims have been dismissed, Safway cannot be held

vicariously liable without proof of negligence or actual supervision on its part and therefore its crossclaim must be dismissed.

Finally, the Hudson Yards Defendants move to amend their Answer to assert crossclaims for contribution, common law and contractual indemnification, and failure to procure insurance. Leave to amend pleadings pursuant to CPLR 3025 shall be freely granted so long as there is no surprise or prejudice to the opposing party, or where the proposed pleading lacks merit (CPLR 3025[b]; *Kocourek v Booz Allen Hamilton Inc.*, 85 AD3d 502, 504 [1st Dept 2011]). That leave to amend is being sought after the Note of Issue has been filed is not dispositive (*Chen v 111 Mott LLC*, 200 AD3d 594 [1st Dept 2021]). Leave to amend a complaint will be denied when the pleading fails to state a cause of action, is palpably insufficient as a matter of law, or is devoid of merit (*Thompson v Cooper*, 24 AD3d 203, 205 [1st Dept 2005]). Leave to amend is denied as to the common law indemnification as the Court has determined that the Hudson Yards Defendant are not vicariously liable under sections 240(1) and 241(6) but is otherwise granted.

Accordingly, for the reasons set forth herein it is hereby,

ORDERED that Safway's motion for summary judgment (Mot. Seq. No. 006) is granted to the extent of dismissing Plaintiffs' Labor Law §§ 240(1) and 241(6) claims against them and denied as to Plaintiffs' Labor Law § 200 and common law negligence claims and as to Safway's crossclaim against the Hudson Yards Defendants; and it is further

ORDERED that Plaintiffs' cross-motion for summary judgment (Mot. Seq. No. 006) is denied in its entirety; and it is further

ORDERED that the Hudson Yards Defendants' motion for summary judgment (Mot. Seq. No. 007) is granted to the extent of dismissing Plaintiffs' Labor Law §§ 240(1) and 241(6) claims against all three Hudson Yards Defendants, Plaintiffs' Labor Law § 200 and common law

negligence claims against 15 Hudson Yards, and Safway's crossclaim for common law indemnification, and is denied as to Plaintiffs' Labor Law § 200 and common law negligence claims as to Tutor Perini and Related; and it is further

ORDERED that the Hudson Yards Defendants' motion for leave to amend their Answer (Mot. Seq. No. 007) is granted to the extent set forth herein and they are directed to file the amended pleading within twenty days of service of this Decision and Order with Notice of Entry.

All other relief sought is denied. This constitutes the Decision and Order of the Court.

| 6/18/2024 | | | | |
|---|---|---|---|---|
| **DATE** | | | LORI S. SATTLER, J.S.C. | |
| **CHECK ONE:** | CASE DISPOSED | | X NON-FINAL DISPOSITION | |
| | GRANTED | DENIED | X GRANTED IN PART | OTHER |
| **APPLICATION:** | SETTLE ORDER | | SUBMIT ORDER | |
| **CHECK IF APPROPRIATE:** | INCLUDES TRANSFER/REASSIGN | | FIDUCIARY APPOINTMENT | REFERENCE |