(December 13, 2016)

■ Joaquin Burgos, Respondent, v Premiere Properties, Inc., Appellant, et al., Defendant. [42 NYS3d 161]—

Order, Supreme Court, New York County (Joan M. Kenney, J.), entered on or about January 5, 2016, which denied defendant Premiere Properties, Inc.'s motion for summary judgment dismissing the complaint and all cross claims against it, unanimously affirmed, without costs.

Plaintiff, Joaquin Burgos, a building porter, commenced this action against defendants Premiere, a building management company, and D.P. Consulting Corp., a construction company, for personal injuries he sustained when he tripped over a D.P. tool bag left on a building stairway, causing him to fall. At the time, plaintiff was working for the building's owner, nonparty Promenade Condominiums.

Plaintiff testified that he worked for the owner as a porter responsible for, among other things, cleaning garbage rooms

and stairwells on floors 7 through 22 of a residential condominium building located at 530 East 76th Street in Manhattan. On July 30, 2013, plaintiff was traveling between the eighth and sixth floors to obtain a replacement light bulb. He entered the building's internal staircase on the eighth floor, then walked down to the seventh floor landing, where he saw tools, two tool bags, and construction dust from work being performed on the seventh floor. The tool bags were not blocking plaintiff's way, but after turning right to go down the stairs to the sixth floor, he tripped over a bag of tools that he had not seen previously.

Plaintiff also testified that his supervisors both worked for the owner, and that the building was managed by defendant Premiere, which plaintiff claimed "supervises the construction work done in the building." He stated that Joseph Grimes was Premiere's representative in the building, but that Grimes did not supervise him and never asked him to do anything.

Jose Rodriguez, another porter for the owner, testified that in July 2013, there were renovations to the building's hallways, and Grimes was overseeing the project. He also testified that during the week preceding July 30, 2013, the seventh floor stairway door was propped open by a construction cart filled with tools, that D.P. employees stored their tools in duffle bags on the seventh floor landing, and that there was "construction sand, like dust," on the floor of the landing. He further stated that D.P., not the porters, was responsible for cleaning up the construction dust.

Joseph Grimes testified that he was the owner and CEO of Premiere, and also served as the assistant secretary of the building owner. He stated that Premiere's role was to serve as the "day-to-day management of the building," which included hiring and scheduling repair people, and overseeing the quality of their work. In doing so, Grimes interacted with construction teams, including D.P., on a day-to-day basis, and would let them know if he was displeased with work, make decisions regarding the work, and remind them "to move materials from one place to another so that there was clear access to people's apartments as well as stairways." Grimes was authorized to shut down the job "if there was a dangerous or unsafe condition." He further stated that D.P. was responsible for cleaning up after its own work, but that at the end of each day, the building superintendent (an employee of the owner) "would send [the porters] through the hallways to vacuum and dust." He further testified that before July 30, 2013, he and the superintendent spoke with D.P. workers about "the laying out

of tools [in] the common areas and the construction dust that was left in the common areas," and directed them to correct those issues.

The complaint alleges that Premiere and D.P. were "negligent, reckless and careless in [their] ownership, operation, management, maintenance, control, inspection and repair" of the building, allowing debris to remain on the staircase for an unreasonable amount of time. While the complaint does not specify any applicable Labor Law provisions, the verified bill of particulars alleges, among other things, that the defendants violated Labor Law §§ 200, 240 (1), and 241 (6).

Premiere moved for summary judgment dismissing the complaint as against it, arguing that the Labor Law claims were abandoned and that it was not liable under the common law because it did not own the building and was not in complete and exclusive control of the management or operation of the building, and did not cause or create the open and obvious condition. It also argued that plaintiff was not covered under the Labor Law because he was not involved in the construction project. Supreme Court denied the motion, stating, among other things, that "it is not clear to the Court what 'labor law' provisions have been alleged to have been violated by [Premiere]," and that only the trier of fact could determine the proximate cause of the accident and whether Premiere was negligent.

Plaintiff raised no arguments concerning his claims under Labor Law §§ 240 (1) and 241 (6) either in opposition to defendant's motion or on appeal. Accordingly, those claims are deemed abandoned.

There are issues of fact, however, regarding the Labor Law § 200 claim. "Section 200 (1) of the Labor Law codifies an owner's or general contractor's common-law duty of care to provide construction site workers with a safe place to work" (*Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 143 [1st Dept 2012]). Statutory agents of the owner and general contractor are also potentially liable under Labor Law § 200 (*see DeMaria v RBNB 20 Owner, LLC*, 129 AD3d 623 [1st Dept 2015]).

Given its responsibilities regarding the construction work—responsibilities that resemble those of a construction manager—there are issues of fact as to whether Premiere was a statutory agent of the owner and general contractor, i.e., whether it exercised general control over the work site (*Rainer v Gray-Line Dev. Co., LLC*, 117 AD3d 634, 635 [1st Dept 2014]), rather than the exclusive control that it claims on appeal.

Premiere CEO Grimes's testimony supports plaintiff's claim that Premiere exercised general control over the work site. Not only did Grimes hire and schedule the repair people and oversee the quality of their work, but he also interacted with construction teams on a day-to-day basis, told them if he was displeased with work, made decisions about the work, and reminded the teams to move materials around to insure clear access to apartments and stairways. He was authorized to shut down the job "if there was a dangerous or unsafe condition," and before plaintiff's injury he and the superintendent spoke with D.P. workers about not leaving tools and construction dust in the common areas. From theses facts, a jury could find that Premiere exercised general control.*

The facts of this case are similar to those in *Voultepsis v Gumley-Haft-Klierer, Inc.* (60 AD3d 524 [1st Dept 2009]). There, the plaintiff was the superintendent of a cooperative apartment building. His employer was the cooperative corporation, and the appellant was the defendant managing agent of the building pursuant to an agreement with the cooperative corporation. The plaintiff was injured while replacing a wooden floor in the building's subbasement, when the ladder he was using slid, causing him to fall to the ground. This Court found that there were issues of fact as to the "scope" of the managing agent's "oversight and control of the work" for statutory agency purposes (*id.* at 525 [internal quotation marks omitted]).

There are also issues of fact as to whether Premiere had constructive or actual notice of the condition that caused the accident, and whether the tool bag that plaintiff tripped over "[was] readily observ[able] by reasonable use of the senses[,] [considering plaintiff's] age, intelligence and experience" (*Bodtman v Living Manor Love, Inc.*, 105 AD3d 434, 434-435 [1st Dept 2013]). Concur—Mazzarelli, J.P., Acosta, Saxe, Kapnick and Kahn, JJ.

---

* Inasmuch as Premiere did not supervise plaintiff, it cannot raise a Workers' Compensation Law defense even if it is found to be a statutory agent of the owner pursuant to the Labor Law (*Voultepsis v Gumley-Haft-Klierer, Inc.*, 60 AD3d 524, 525 [1st Dept 2009]).