Irias v Abdul Constr. & Painting Corp. (2025 NY Slip Op 52159(U))

[*1]

Irias v Abdul Constr. & Painting Corp.

2025 NY Slip Op 52159(U)

Decided on December 5, 2025

Supreme Court, Bronx County

Crawford, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 5, 2025
Supreme Court, Bronx County

Alex Bieton Irias and Raul Guevara, Plaintiffs,

againstAbdul Construction & Painting Corp., HP Noonan Plaza Housing Development Fund Company, Inc., Noonan Plaza Housing LLC, Garfield Construction LLC, 4K Construction, and 4K Contracting Inc., Defendants.
HP Noonan Plaza Housing Development Fund Company, Inc. and Noonan Plaza Housing LLC, Third-Party Plaintiffs,
againstConstructor Luna Corp., Third-Party Defendant.

Index No. 23347/2020E

Ashlee Crawford, J.

Plaintiff Alex Bieton Irias moves pursuant to CPLR 3212 for summary judgment as to liability on his Labor Law § 240 (1) claim against defendants HP Noonan Plaza Housing Development Fund Company, Inc., Noonan Plaza Housing LLC (together, "Noonan"), Garfield Construction LLC ("Garfield"), and 4K Construction, and 4K Contracting, Inc. (together, "4K") (mot. seq. 005). 4K and Noonan separately oppose.
Plaintiff Raul Guevara moves for summary judgment as to liability on his Labor Law §§ 240 (1) and 241 (6) claims against Noonan, Garfield, and 4K (mot. seq. 006). 4K and Noonan separately oppose.
Defendant Garfield moves for summary judgment dismissing plaintiffs' complaints; granting summary judgment to Garfield against co-defendant Abdul Construction & Painting Corp. ("Abdul") and awarding contractual indemnity from Abdul; and dismissing Noonan's cross-claims for contractual and common-law indemnification and contribution asserted against Garfield (mot. seq. 004). Plaintiffs separately oppose. 4K joins Garfield's application, insofar as seeking dismissal of plaintiff's Labor Law 240 (1) and 241 (6) claims, and opposes Garfield's motion only to the extent the Court might make any finding adverse to 4K. Noonan joins that part of Garfield's motion directed to plaintiff's complaint and request for indemnification by Abdul, and opposes that part of the motion seeking to dismiss Noonan's cross-claims. Abdul opposes that part of Garfield's motion directed against it, claiming that no claims have been asserted against it and it is not a named party to this action.BACKGROUNDOn November 20, 2019, plaintiffs were injured while working on a scaffold at a renovation project at 105 West 168th Street, Bronx, New York. Plaintiffs were performing demolition work on a sixth-floor parapet when the right side of the scaffold on which they were standing collapsed, causing plaintiffs to fall to the ground. Noonan owned the premises; Garfield was the general contractor; and Abdul was a sub-contractor for exterior masonry repair work, which in turn hired 4K as a sub-sub-contractor to erect scaffolding. Plaintiffs were employed by non-party Eduard Corp.
Plaintiff Guevara testified that his employer at the time of the accident was non-party Eduard Corp. (Guevara Tr. at 17 [NYSCEF Doc. 151]). Guevara's duties included demolishing and repairing brickwork (id. at 17-18). Guevara worked "with" 4K on the day of the accident (id. at 26-27). His immediate supervisor was Munir, a foreman who worked for 4K (id. at 22, 63, 66). No supervisors from Eduard were on the site (id. at 66-67) Guevara was wearing a hard hat, goggles, and a safety harness (id. at 28-29). Guevara wore a lanyard, which was attached to the parapet wall (id. at 99). The job at issue involved demolishing a parapet on top of a six-story building (id. at 24). Guevara testified that he was working on a hanging scaffold, which had been set up by Munir (id. at 28, 32-33). The scaffold's weight limit rating was illegible due to physical deterioration (id. at 70). Guevara testified that Bieton was on the scaffold with him (id. at 29-30). [*2]Bieton also worked for Eduard Corp. (id. at 30). Munir had inspected Guevara's and Bieton's safety harnesses, lanyards, and lanyard locks (id. at 74). To raise or lower the scaffold, Guevara and Bieton had to simultaneously press two buttons, each of which activated a motor located on their respective end of the scaffold (id. at 34-35). At the time of the accident, Guevara and Bieton were using the scaffold to lower demolition debris to the ground (id. at 38-39). Munir was supervising plaintiffs from the rooftop (id. at 74, 93). Guevara testified that Munir was responsible for deciding when there was enough material on the scaffold to warrant lowering it, as well as making sure the scaffold was not overloaded (id. at 75). Munir instructed Guevara to lower the scaffold (id. at 76). As the scaffold was lowering, Guevara heard a sound like a hammer hitting metal, and his side of the scaffold fell to the ground (id. at 42-43). He was struck in the face by a five-foot tall piece of metal and lost consciousness (id. at 44-45). Guevara fell approximately twenty feet (id. at 114). Guevara did not believe the scaffold had been overloaded (id. at 110).
Plaintiff Bieton testified that he was a bricklayer with Eduard (Bieton Tr. 17 [NYSCEF Doc. 153]). He did not know how many bricks were on the scaffold immediately prior to the accident (id. at 82). It was the foreman's responsibility to determine when the scaffold was sufficiently loaded to lower (id. at 158-159). Bieton relied on the foreman regarding the weight limit of the scaffold (id. at 91, 144). Bieton was wearing a safety harness, a lanyard lock, and a hardhat at the time of the accident (id. at 167-171). He was not told the accident was the result of overloading (id. at 103-104). Bieton's testimony coincides with Guevara's.
Eli Davidowitz testified at his deposition that he works for non-party Park Management, a management company affiliated with Noonan (Davidowitz Tr. 10-12 [NYSCEF Doc. 155]). He was tasked with overseeing the construction project (id. at 13-14). Noonan hired Garfield as the general contractor for the project (id. at 14, 24).
Abe Berkovic testified at his deposition that he was an independent contractor working as a project manager for Garfield at the time of the accident (Berkovic Tr. 13-15, 75-76 [NYSCEF Doc. 128]). Garfield was the general contractor for the project (id. at 90-91). Berkovic testified that Garfield's onsite superintendent was Moshe Freund (id. at 16-17, 21, 72). Freund was required to be on-site every day, and he was responsible for the safety of workers from contractors other than Abdul, including ensuring that they were wearing the proper tools and protective equipment (id. at 19-20, 27). Garfield contracted Abdul for exterior façade work and pointing (id. at 22-24, 27-28, 84-85, 89, 108). Hassan was Abdul's superintendent and was responsible for the safety of Abdul's workers, including their harnesses and lifelines (id. at 18, 26, 43-47, 55, 64-67, 69-70). 
Mohammad Abdul Quader testified at his deposition that he is the president of Abdul (Quader Tr. 10 [NYSCEF Doc. 176]). He testified that Abdul contracted 4K to rig suspended scaffolds for Abdul's work (id. at 15-16, 36, 148, 151). Abdul's foreman was Munir, a 4K employee (id. at 18, 31, 131). Abdul hired Eduard to provide workers (id. at 17-18, 36). Quader testified that his responsibilities included making sure the work was being performed safely (id. at 174). "Munir" and "Hassan" were responsible for making sure the components of the scaffold were in working order (id. at 48). Munir was responsible for the safety of workers using the scaffold (id. at 105-107).
Kamrul Hassan ("Hassan") testified at his deposition that he is the owner of 4K (Hassan Tr. 8 [NYSCEF Doc. 192]). 4K's foreman was Munir Mozumder ("Munir") (id. at 13). 4K erected the scaffolds at the site, including the scaffold that was involved in the accident (id. at 9-[*3]11, 32, 49). Hassan did not remember whether any of the beams used on the scaffold at issue were missing their rating stamps, which denoted load capacity (id. at 72-73). Both Hassan and Munir were present at the site every day (id. at 14). Munir was required to inspect the scaffold and its components, including the motors, tiebacks, wire ropes, and shackles, every morning (id. at 16, 50). Hassan was not present at the jobsite when the scaffold collapsed, and he learned of the accident during a phone call from Munir (id. at 36). When Hassan inspected the scaffold after the accident, on the same day, he found that a piece of the clamp that was required to suspend the scaffold was missing and could not be found (id. 39-43). He did not know how many bricks were on the scaffold, and stated that the debris that was on the scaffold at the time of the accident was not weighed (id. at 45-46). Hassan believed that the scaffold was overloaded because of the amount of debris he saw on the scaffold (id. at 82).

DISCUSSION
A party seeking summary judgment "must make a prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to eliminate any material issues of fact from the case" (Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853 [1985]). Once this showing is made, the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of triable issues of fact (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). "[M]ere conclusions, expressions of hope or unsubstantiated allegations or assertions are insufficient" to defeat summary judgment (id.). Summary judgment is a drastic remedy and must be denied if there is any doubt as to the existence of a triable issue of material fact (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978]).

I. Labor Law § 240 (1)
Plaintiffs move for summary judgment as to liability on their claims under Labor Law § 240 (1). Garfield moves to dismiss those claims and 4K and Noonan join.
Labor Law § 240 (1) provides in relevant part that where there is erection, demolition, repairing, or altering of a building, contractors and owners "shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed." "The statute imposes upon owners, contractors and their agents a nondelegable duty that renders them liable regardless of whether they supervise or control the work" (Barreto v Metropolitan Transp. Auth., 25 NY3d 426, 433 [2015]). "[W]here an accident is caused by a violation of the statute, the plaintiff's own negligence does not furnish a defense; however, where a plaintiff's own actions are the sole proximate cause of the accident, there can be no liability" (id. [internal quotation marks omitted]). "Thus, in order to recover under section 240 (1), the plaintiff must establish that the statute was violated and that such violation was a proximate cause of his injury" (id.). Labor Law § 240 (1) is to be liberally construed so as to accomplish its legislative purpose of protecting workers (Stoneham v Joseph Barsuk, Inc., 41 NY3d 217, 221 [2023]; Rocovich v Consolidated Edison Co., 78 NY2d 509, 513 [1991]).
"Not every worker who falls at a construction site, and not every object that falls on a worker, gives rise to the extraordinary protections of Labor Law § 240 (1)" (Narducci v Manhasset Bay Assoc., 96 NY2d 259, 267 [2001]). "[L]iability is contingent upon the existence of a hazard contemplated in section 240 (1) and the failure to use, or the inadequacy of, a safety device of the kind enumerated therein" (id., citing Ross v Curtis-Palmer Hydro-Elec. Co., 81 [*4]NY2d 494, 501 [1993]). In a case involving a ladder or scaffold collapse, a defendant must overcome the "presumption that the ladder or scaffolding device was not good enough to afford proper protection" (Kebe v Greenpoint-Goldman Corp., 150 AD3d 453, 454 [1st Dept 2017] [internal quotation and citation omitted]).
"To raise a triable issue of fact as to whether plaintiff was the sole proximate cause of an accident, the defendant must produce evidence that adequate safety devices were available, that the plaintiff knew they were available and was expected to use them, and that the plaintiff unreasonably chose not to do so, causing the injury sustained" (Nacewicz v Roman Catholic Church of the Holy Cross, 105 AD3d 402, 402-403 [1st Dept 2013]).
Plaintiffs have met their prima facie burden under Labor Law 240 (1) as against Garfield (which did not oppose plaintiffs' motions), Noonan and 4K. Noonan and 4K fail to raise an issue of fact, and Garfield fails to demonstrate its prima facie entitlement to dismissal of plaintiffs' Labor Law § 240 (1) claims, including on the ground that plaintiffs were the sole proximate cause of the accident. Plaintiffs testified that they were wearing safety harnesses and lanyards, and the elevation-related accident these devices were intended to protect against nevertheless occurred (see Viruet v Purvis Holdings LLC, 198 AD3d 587, 588 [1st Dept 2021]).
Neither does Garfield establish that plaintiffs were recalcitrant workers. The recalcitrant worker defense requires a showing that the injured worker was specifically instructed to use a particular safety device and explicitly refused to do so (see White v 31-01 Steinway, LLC, 165 AD3d 449, 451-452 [1st Dept 2018]; see also Kosavick v Tishman Constr. Corp. of NY, 50 AD3d 287, 288 [1st Dept 2008]). Here, there is no indication in the record that plaintiffs refused to use a particular safety device. On the contrary, plaintiffs testified that they were wearing safety equipment and that they loaded the scaffold to the extent to which they were directed by their supervisor, and that they lowered the scaffold when directed. Regardless, Garfield submits no expert evidence that the accident was caused by the scaffold being overloaded. Even if Garfield had submitted such evidence, Guevara's testimony that the scaffold was not overloaded would raise a question of fact.
Accordingly, plaintiffs' applications for summary judgment as to liability under Labor Law § 240 (1) against Noonan, Garfield, and 4K is granted, and Garfield's motion seeking dismissal of those claims is denied.

II. Labor Law § 200 and Common Law Negligence
Garfield moves for summary judgment dismissing plaintiffs' Labor Law § 200 and common law negligence claims. "In order to prevail in any action premised upon [common law] negligence, it must be established that defendant owed plaintiff a duty, that defendant, by act or omission, breached such duty, that such breach was the proximate cause of plaintiff's injuries, and that plaintiff sustained damages" (Salvador v New York Botanical Garden, 71 AD3d 422, 423 [1st Dept 2010]). "Section 200 of the Labor Law is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work" (Comes v New York State Elec. & Gas Corp., 82 NY2d 876, 877 [1993]). "Claims for personal injury under the statute and the common law fall into two broad categories: those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed" (Cappabianca v Skanska USA Bldg. Inc., 99 AD3d 139, 143-44 [1st Dept 2012]). "Where an existing defect or dangerous condition caused the injury, liability attaches if the owner or general contractor created the condition or had actual or constructive notice of it" (id. at 144). "Where the injury was caused by the manner [*5]and means of the work, including the equipment used, the owner or general contractor is liable if it actually exercised control over the injury-producing work" (id.).
"Section 200 of the Labor Law is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work" (Cruz v Toscano, 269 AD2d 122 [1st Dept 2000]). "An implicit precondition to this duty is that the party charged with that responsibility have the authority to control the activity bringing about the injury" (id. [internal quotation marks omitted]). "Where the alleged defect or dangerous condition arises from the contractor's methods and the owners exercises no supervisory control over the operation, no liability attaches to the owner under the common law or under Labor Law § 200" (id. at 123).
Garfield contends that the scaffold was caused to fall because it was overloaded and that, therefore, the accident was caused by the means and methods of the work such that the proper analysis is whether defendants exercised supervisory control of the injury-producing work. However, Garfield has not established that the accident was in fact caused by overloading the scaffold. Further, Hassan testified that the scaffold was missing a crucial component, which indicates an existing defect. Therefore, Garfield does not rule out the possibility that the proper analysis is whether it had constructive notice of a defective condition. Because the missing clamp was visible, it is sufficient to create a triable issue of fact as to whether Garfield had constructive notice of the condition (see Jaycoxe v VNO Bruckner Plaza, LLC, 146 AD3d 411, 412 [1st Dept 2017][visible defect in ladder raised issue of fact as to constructive notice]). Garfield also does not establish prima facie that it lacked notice, because it does not submit sufficient evidence "of when the site had last been inspected before the accident" (Pereira v New Sch., 148 AD3d 410, 412-413 [1st Dept 2017]; see Kolakowski v 10839 Assoc., 185 AD3d 427-428 [1st Dept 2020]). Accordingly, Garfield's application to dismiss plaintiffs' Labor Law § 200 and common law negligence claims is denied.

III. Labor Law § 241 (6)

Guevara moves for summary judgment as to liability on his claim under Labor Law § 241 (6), asserted against Noonan, Garfield, and 4K. Garfield has not submitted opposition and Noonan and 4K do not explicitly oppose this relief.
Garfield moves for summary judgment dismissing the complaints, including plaintiffs' respective claims under Labor Law § 241 (6). Guevara opposes dismissal of this claim, which Irias joins.
Labor Law 241(6) imposes a non-delegable duty of reasonable care upon owners and contractors "to provide reasonable and adequate protection and safety" to persons employed in, or lawfully frequenting, all areas in which construction, excavation or demolition work is being performed (Rizzuto v L.A. Wenger Contr. Co., 91 NY2d 343, 348 [1998]). To establish a claim under Labor Law 241(6), plaintiff must show that defendant violated an Industrial Code regulation that sets forth a specific, positive command, and is not simply a recitation of common-law safety principles (Toussaint v Port Authority of New York and New Jersey, 38 NY3d 89, 93-94 [2022]; Ross v Curtis-Palmer Hydro-Elec. Co., 81 NY2d 494, 503 [1993]). Plaintiff must also establish that such violation was the proximate cause of the accident (Gonzalez v Stern's Dept. Stores, 211 AD2d 414, 415 [1st Dept 1995]).
Guevara predicates his Labor Law § 241 (6) cause of action on two Industrial Code subsections: 12 NYCRR 23-5.1 (c) (1), which requires that all scaffolding bear four times the maximum weight required to be placed upon it; and 12 NYCRR 23-1.16 (b), which requires that [*6]safety belts and harnesses be properly attached to a tail line or lifeline so that the user cannot fall more than five feet. All other predicates not raised in Guevara's legal arguments are deemed abandoned, as against Garfield only, and are dismissed to that extent (Burgos v Premier Props. Inc., 145 AD3d 506, 508 [1st Dept 2016]; 87 Chambers, LLC v 77 Reade, LLC, 122 AD3d 540, 542 [1st Dept 2014]).
Guevara's application is denied with respect to 12 NYCRR 23-5.1 (c) (1), because this provision is insufficiently specific to support a Labor Law § 241 (6) claim (Susko v 337 Greenwich LLC, 103 AD3d 434, 436 [1st Dept 2013]). In any event, there has been no showing, beyond speculation, as to the weight that was placed on the scaffold at issue. However, Guevara's application is granted with respect to 12 NYCRR 23-1.16 (b). The subsection is sufficiently specific to sustain a claim under Labor Law § 241 (6) (Jerez v Tishman Const. Corp. of New York, 118 AD3d 617, 618 [1st Dept 2014]). The safety devices at issue failed to protect Guevara from a fall greater than five feet (Stigall v State, 189 AD3d 469, 470 [1st Dept 2020]). Garfield's sole proximate cause argument is rejected for the reasons discussed supra. Therefore, Guevara's motion for summary judgment on his Labor Law § 241 (6) claim is granted as against Noonan, Garfield, and 4K, only as predicated on 12 NYCRR 23-1.16 (b). Garfield's motion for summary judgment dismissing Guevara's and Irias's Labor Law § 241 (6) claims is granted only to the extent of dismissing all other predicates as against Garfield, and is otherwise denied.

IV. Contractual Indemnity, Common Law Indemnity, Contribution
Garfield contends that Abdul owes it contractual indemnity because Abdul agreed to indemnify Garfield for any claims arising out of the work by Abdul or its sub-subcontractors, and the scaffold at issue was erected by Abdul's sub-subcontractor, 4K. However, Garfield has not asserted a claim against Abdul and is, therefore, not entitled to summary judgment against it (see Fishman Aff. in Opp [NYSCEF Doc. 224]).
Garfield moves to dismiss Noonan's cross-claims for contractual indemnification, common law indemnification, and contribution asserted against it, contending that it demonstrated its freedom from negligence (see NYSCEF Doc. 133 at Rider ¶ 1 [indemnity provision]).
"A party is entitled to full contractual indemnification provided that the 'intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances'" (Drzewinski v Atlantic Scaffold & Ladder Co., Inc., 70 NY2d 774, 777 [1987] [citation omitted]). "The right to contractual indemnification depends upon the specific language of the contract" (DiBrino v Rockefeller Ctr. N., Inc., 230 AD3d 127, 136 [1st Dept 2024] [citation omitted]). "Indemnification provisions are strictly construed and a promise to indemnify should not be found unless it can be clearly implied from the language and purpose of the entire agreement and the surrounding facts and circumstances" (Madison Hospitality Mgt. LLC v Acacia Network Hous., Inc., 230 AD3d 1063 [1st Dept 2024] [internal quotation marks and citation omitted]). However, conditional judgment on the issue of contractual indemnity is premature where triable issues of fact exist as to the indemnitee's negligence (Mohammed v Silverstein Props., Inc., 74 AD3d 453, 454 [1st Dept 2010]). Since there exists a question of fact as to Garfield's constructive notice of the allegedly defective condition pursuant to Labor Law § 200, Garfield has not excluded the possibility of its own negligence and thus the question of indemnity is premature (see Pena v Intergate Manhattan LLC, 194 AD3d 576, 578 [1st Dept 2021]). That part of Garfield's motion seeking dismissal of Noonan's cross-claims for common law indemnity and contribution against Garfield is also [*7]denied (see Shelton v Chelsea Piers, L.P., 214 AD3d 490 [1st Dept 2023]).
Accordingly, it is hereby
ORDERED that the motion by plaintiff Alex Bieton Irias for summary judgment as to liability on his Labor Law § 240 (1) claim against defendants HP Noonan Plaza Housing Development Fund Company, Inc., Noonan Plaza Housing LLC, Garfield Construction LLC, 4K Construction, and 4K Contracting, Inc. is GRANTED (mot. seq. 005); and it is further
ORDERED that the motion by plaintiff Raul Guevara for summary judgment as to liability on his Labor Law §§ 240 (1) and 241 (6) claims against defendants HP Noonan Plaza Housing Development Fund Company, Inc., Noonan Plaza Housing LLC, Garfield Construction LLC, 4K Construction, and 4K Contracting, Inc. is GRANTED IN PART as to his claim under Labor Law § 240 (1) and as to his claim under Labor Law § 241 (6) as predicated on 12 NYCRR 23-1.16 (b), and is otherwise denied (mot. seq. 006); and it is further
ORDERED that Garfield's motion (Seq. No. 4) is denied in its entirety; and it is further
ORDERED that the motion by defendant Garfield Construction LLC for summary judgment (i) dismissing plaintiffs' complaints; (ii) granting Garfield summary judgment against co-defendant Abdul Construction & Painting Corp. on a non-existent cross-claim for contractual indemnity; and (iii) dismissing Noonan's cross-claims for contractual and common-law indemnification and contribution asserted against Garfield is GRANTED IN PART, only to the extent of dismissing all predicates under Labor Law § 241 (6) as directed against it, except for 12 NYCRR 23-1.16 (b), and is otherwise DENIED(mot. seq. 004) ; and it is further
ORDERED that all parties shall appear for a pre-trial conference to be calendared by the Clerk of the Court.
This decision constitutes the order of the Court.
Dated: December 5, 2025ASHLEE CRAWFORD, A.J.S.C.